# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00637-CR

**Christopher Roberts, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. D-1-DC-12-302227, THE HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Christopher Roberts of murdering his girlfriend, *see* Tex. Penal Code § 19.02(b)(1) (defining offense of murder as intentionally or knowingly causing death of individual), and assessed his punishment at confinement for 50 years in the Texas Department of Criminal Justice, *see id.* §§ 19.02(c) (classifying murder as first degree felony), 12.32 (establishing punishment range for first degree felony). In four points of error, appellant contends the trial court erred in denying his requested jury charge instruction, asserts that opinion testimony was erroneously admitted, challenges the sufficiency of the evidence, and complains about improper jury argument by the State. We find no reversible error. However, through our own review of the record, we have found non-reversible error in the written judgment of conviction. We will modify the judgment to correct the error and, as modified, affirm the trial court's judgment of conviction.

# BACKGROUND[1]

Police and emergency medical personnel were dispatched in response to a 911 call regarding a possible deceased person and found the body of Kirstin Anderson in the bedroom of her home. Appellant had called 911 to request an ambulance because he was "pretty positive" that Anderson, his girlfriend and the landlord of the house, was dead. A subsequent autopsy determined that Anderson had been strangled to death.[2] In interviews with law enforcement, appellant admitted that he had choked Anderson the night she died. While he initially denied that his conduct caused her death, he ultimately confessed that he "killed her."

## DISCUSSION

### Jury Charge Error

In his first point of error, appellant argues that the trial court erred by denying his requested jury charge instruction on the lesser-included offense of manslaughter.

We review alleged jury charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App.

---

[1] Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we provide only a general overview of the facts of the case here. We provide additional facts in the opinion as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4. The facts recited are taken from the testimony and other evidence presented at trial.

[2] Specifically, the medical examiner testified that based on her autopsy examination of Anderson, she concluded that "[t]he cause of death was strangulation and the manner of death was homicide."

2005). The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016) (citing *Almanza*, 686 S.W.2d at 171). If the jury charge error has been properly preserved by an objection or request for instruction, as it was here, reversal is required if the appellant has suffered "some harm" from the error. *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013) (citing *Almanza*, 686 S.W.2d at 171); *see Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) ("If there was error and appellant objected to the error at trial, reversal is required if the error 'is calculated to injure the rights of the defendant,' which we have defined to mean that there is 'some harm.'" (quoting *Almanza*, 686 S.W.2d at 171)).

Determining whether a defendant is entitled to a lesser-included-offense instruction requires a two-part analysis. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011); *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007). We first consider whether the offense contained in the requested instruction is a lesser-included offense of the charged offense. *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011); *Hall*, 225 S.W.3d at 535. If so, we must decide whether the admitted evidence supports the instruction. *Goad*, 354 S.W.3d at 446; *Rice*, 333 S.W.3d at 144.

Neither party disputes that manslaughter is a lesser-included offense of murder as charged in the indictment here, *see Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012); *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003), so we proceed to the second prong. Under this prong, we must consider whether there was some evidence raised at trial from which a rational jury could acquit appellant of the greater offense of murder and convict him of the

3

lesser-included offense of manslaughter. *See Cavazos*, 382 S.W.3d at 385; *see also* Tex. Penal Code §§ 19.02(b)(1) (person commits offense of murder if he intentionally or knowingly causes death of individual), 19.04(a) (person commits offense of manslaughter if he recklessly causes death of individual). We must determine if there is some evidence in the record that would permit a jury to rationally find that, if appellant is guilty, he is guilty only of manslaughter. *See Rice*, 333 S.W.3d at 145; *Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006).

The evidence must establish the lesser-included offense as "a valid, rational alternative to the charged offense." *Rice*, 333 S.W.3d at 145 (quoting *Hall*, 225 S.W.3d at 536); *Segundo v. State*, 270 S.W.3d 79, 91 (Tex. Crim. App. 2008). We consider all of the evidence admitted at trial, not just the evidence presented by the defendant. *Goad*, 354 S.W.3d at 446; *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993). "Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge." *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011). We may not consider the credibility of the evidence or whether it conflicts with other evidence or is controverted. *Goad*, 354 S.W.3d at 446–47. However, "it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Sweed*, 351 S.W.3d at 68 (quoting *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997)). "Meeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Cavazos*, 382 S.W.3d at 385.

4

Murder is a "result of conduct" offense, which requires that the culpable mental state relate to the result of the conduct, i.e., the causing of the death. *Roberts v. State*, 273 S.W.3d 322, 328–29 (Tex. Crim. App. 2008), *abrogated in part by Ex parte Norris*, 390 S.W.3d 338, 341 (Tex. Crim. App. 2012); *see Cavazos*, 382 S.W.3d at 384. The critical issue here is on the element of appellant's mental state when he choked Anderson to death. As indicted, the State needed to prove that appellant acted intentionally or knowingly in causing Anderson's death. *See* Tex. Penal Code § 19.02(b)(1). A person acts "intentionally, or with intent" with respect to a result of his conduct when it is his conscious objective or desire to cause the result. *Id.* § 6.03(a). A person acts "knowingly, or with knowledge" with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). Manslaughter would require proof that appellant recklessly caused Anderson's death. *See id.* § 19.04. A person acts "recklessly, or is reckless" with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id.* § 6.03(c).

The question is whether the record before us provides more than a scintilla of evidence that, if appellant is guilty, he is guilty only of manslaughter; that is, of recklessly causing the death of his girlfriend. *See Schroeder*, 123 S.W.3d at 400; *see also Cavazos*, 382 S.W.3d at 385 ("While it is true that the evidence may be weak or contradicted, the evidence must still be directly germane to the lesser-included offense and must rise to a level that a rational jury could find that if Appellant is guilty, he is guilty only of the lesser-included offense."). There must be some affirmative evidence in the record demonstrating that appellant was aware of but consciously disregarded a substantial and unjustifiable risk that death would occur from choking Anderson. This

5

evidence must also rebut or negate the mental state of the greater murder offense: intentionally or knowingly. That is, this evidence must also demonstrate that appellant did not act with the conscious objective or desire to cause Anderson's death or with an awareness that his conduct was reasonably certain to cause Anderson's death when he choked her. Appellant directs us to no such evidence. The evidence he relies on does not demonstrate a reckless killing.

At trial, during the charge conference, appellant relied on portions of his first interview with the investigating detective, which he maintained constituted evidence indicating that he "choked [Anderson] to unconsciousness." He claimed that this evidence combined with the medical examiner's testimony—that someone could be choked but recover and die later—could support a finding that he acted recklessly that night.[3] However, the evidence appellant relied on to

---

[3] This is how appellant characterized the medical examiner's testimony in his argument to the trial court. We assume that appellant was referring to the following testimony that was elicited during the cross examination of the medical examiner:

Q.  So hypothetically, someone is assaulted, they're placed in some type of hold, the blood is cut off for 30 seconds. If it stops, would that person still be alive?

A.  Probably, yes.

Q.  Would they still be breathing?

A.  Yes.

Q.  Would they appear to be asleep?

A.  Yes.

Q.  Could they possibly recover from that?

A.  Yes.

support his argument—his statements about a prior choking incident and the alleged "sex with strangulation" the night of Anderson's death—does not demonstrate that he choked Anderson "to unconsciousness" that night.

During his first interview, appellant explained that on one occasion, about a year before the night he choked Anderson to death, he restrained Anderson by putting her in a "figure four" chokehold to calm her down. He choked her for "maybe four minutes" until she passed out. However, also during that interview, appellant indicated that on the night Anderson died, although he choked her to calm her down, she did not lose consciousness. Appellant's reliance on the "sex with strangulation" evidence is also misplaced as it too fails to demonstrate that he choked Anderson

---

Q.  Is it also possible that they did not recover from that?

A.  Yes.

Q.  That they could expire or they could die later?

A.  Correct, yes.

Q.  Would blood alcohol of that person impact that chance of survival, in your medical opinion?

A.  Potentially, sure.

Q.  So someone like Ms. Anderson whose blood alcohol was .36, is it possible, in your opinion as a medical examiner, that she could have been choked to unconsciousness but then been alive and due to her high blood alcohol died later?

A.  Yes.

Q.  So that's totally possible?

A.  Yes.

7

to unconsciousness. During his first interview, appellant indicated that Anderson had an orgasm in response to his choking her that night. He said that was the first time that particular response had happened, and after that, the two of them went to bed, "fooled around," and had sex "for a while." This evidence demonstrates that Anderson did not lose consciousness when appellant choked her, even if he choked her as part of their sexual activities.[4] Appellant fails to explain, and we cannot discern, how this evidence—showing that Anderson did not lose consciousness when he choked her—supports his argument that the evidence of his "choking Anderson to unconsciousness" combined with the medical examiner's testimony—which indicated that losing consciousness was a component of being choked to death, even when death occurred later rather than at the time of choking—demonstrates his reckless mental state as to his choking of Anderson the night she died.

In his brief on appeal, to support his assertion that the manslaughter instruction should have been given, appellant points to the investigating detective's comments during his interviews of appellant that suggested that appellant's conduct was accidental or inadvertent. However, the fact that the detective suggested that appellant's conduct might have been accidental or inadvertent does not affirmatively demonstrate that when appellant choked Anderson he did not act with the conscious objective or desire to cause her death or with an awareness that choking her was reasonably certain to cause her death. More importantly, the record reflects that the detective's suggestive comments were made as part of an interrogation technique, and were not expressions of the detective's opinion.

_____

[4] In his interview, appellant explicitly stated that when he had sex with Anderson, "She was wide awake. She was drunk, but awake."

In his testimony, the detective first described, in general terms, "the methodology [he] may use in the course of an interview":

It's never been my experience and I know most people don't come in and tell us the truth when they've committed murder, and I think a reasonable person would understand that, so we're trained to give them reasons to give us the truth. We're not allowed to coerce them. We're not allowed to threaten them, make promises to them. We can't do any of that so we have to do it within legal boundaries.

However, we can deceive them if we need to. We can lie to them. We can pretend that we're their friend. We can act like what they did was okay, that a person would understand what they have done. We can tell them they are not a bad person. We can make it seem like they didn't really mean to do this. We can blame the victim, like it was all the victim's fault. All of these are means that we are trying to do to get them -- to elicit the truth from them and ultimately to corroborate what we are already seeing with regard to the evidence.

He then described the interview techniques he employed during his interviews of appellant, including comments minimizing his conduct or reducing his culpability:

They are interrogation tactics. They are where I'm trying to minimize his behavior. That's a term we use. Essentially by telling someone they are not a bad person, you didn't mean to do it, all of those things go towards minimizing their behavior, you are trying to give them a moral excuse for what they are doing. Because, as I said before, they are not just going to come out and tell you that they murdered somebody. You have to give them a reason to tell you that, without -- like I said, without making any promises or threats, you know, obviously abusing somebody. You have to give them that moral excuse and that comfort and part of that is acting like it is okay what they have done.

. . . .

Again, part of my role is to minimize his behavior, whether I believe it or not, because I want to keep him on my side and thinking that he can trust me and talk to me and so I can get as much of the truth about this investigation as possible. If I flat out tell somebody, oh, you're going down for a long time, they're going to throw the book at you, they're probably not going to be very forthcoming with me. So I will acknowledge that there's a possibility these things could happen, because in truth

9

they could, but when I am saying these things, yeah, I am saying them to minimize his behavior so that he will continue to speak with me when, in fact, I know that the acts are clearly knowingly and intentionally done.

Finally, on cross examination, the detective explicitly rejected the notion that appellant was guilty of a lesser offense:

Q. Okay. Now, you testified, Detective, that you believed that this was a murder case and not a manslaughter case?

A. Yes, sir.

Q. Now, is that just simply your opinion? That is not so much your legal opinion, that is just your own personal opinion?

A. It's both, sir.

The mere fact that the detective suggested that appellant accidentally or inadvertently caused Anderson's death as part of an interview technique does not in and of itself demonstrate that appellant recklessly choked Anderson. Furthermore, these suggestions about possibilities, which appellant ultimately rejected when he fully confessed, do not affirmatively negate the greater mental states of intentionally or knowingly causing Anderson's death.

Moreover, we find no evidence that establishes the lesser-included offense as "a valid, rational alternative" to intentionally or knowingly causing death. During the first interview, portions of which appellant relied on to support a reckless killing, appellant denied causing Anderson's death. Even as he admitted choking Anderson, he insisted that she died of natural causes. He said that he "wouldn't claim to [contributing to her death]" and that "[he didn't] know how [she was] dead." He did not say that he caused her death, let alone that he did so recklessly, accidentally, or inadvertently.

10

Further, when appellant did eventually admit to choking Anderson to death in his third interview, his admission demonstrated that he acted at least knowingly if not intentionally. Initially, at the beginning of his third interview, appellant once again said he did not think that he caused Anderson's death and insisted that she died of natural causes. He then later indicated that it was "not entirely unlikely" that he "contributed to her death" but felt that "[it was] not that big of a deal" so he would not plead guilty to first degree murder. He then asserted that "it's like maybe like manslaughter or something" because he "didn't intentionally kill her." He continued, saying that "[m]aybe [he] just saw red, and just actually f***ing killed her." The detective then suggested (as part of the interview techniques described earlier) a difference between "going out and intentionally killing someone" and "in the heat of the moment, things going too far." After talking about the stress he had been under, appellant said that he agreed with the detective and that "[he] just did see red and accidentally kill her." A few minutes later, he repeated that he agreed and that he "saw red, [and] killed her. Oops."

When the detective attempted to elicit details about the incident, however, appellant's statements revealed that the choking was not accidental or inadvertent. He explained,

> If, if I really wanted to kill her, I would do one of two things. Straight choke her, or wrap her f***ing mouth with duct tape. So if I didn't wrap her mouth in duct tape, I probably straight choked her.

Then, after disclosing that he had previously thought of "just reaching out and just shutting her up," appellant said,

11

So, I would imagine that's what happened. I mean because, I've done martial arts and everything, you know. I'm pretty well trained, I have pretty good control and if I were to choke somebody out, you know, I could go to sleep. I would get back up. I'd go have a beer. But, umm . . . If I were to really did wanna kill her [sic] . . . I would have just reached out and grabbed her and torn her throat out.

Following up on that statement, the detective indicated that Anderson's injuries were consistent with "someone coming straight on with her" (a straight choke as opposed to a figure four choke) and asked appellant how she might have sustained her other injuries, whether appellant recalled "getting physical." Appellant revealed that "[m]aybe [he] probably slapped her. . . . That's what it was. [He] slapped her and freaked out thinking she was gonna call the cops and killed her. That's what it was." The detective asked what Anderson had done to anger appellant, and appellant explained that Anderson had mentioned his father's temper, which instigated the physical altercation:

She just wouldn't shut up. She just mentioned my father's temper. . . . When she mentioned that, I lost control. Like my father did when he was raising me, I just lost control.

. . .

She mentioned my father, I slapped her, freaked out thinking I thought I was gonna lose it, go to jail, lose my job, be out back on the streets again for winter, so I just killed her.

. . .

I didn't even expect her to have a bloody lip. I think I just slapped her and I just saw blood there. I saw red and it was over.

When the detective asked if Anderson said anything after appellant hit her, appellant responded,

12

Oh yeah!  Oh, my gosh!  As a matter of fact, I think what really did it was she said "die" 4 times.

. . .

[W]hen she said "die" 4 times, I was just absolutely possessed to f***ing kill her.

. . .

And, so when she said "die" 4 times, that's it. . . I just saw red.

. . .

I reached, I grabbed her by the throat and I remember going to bed.

Even if appellant's initial statements (claiming that he choked Anderson to calm her down or as part of their sexual activities) may be construed as indicating that he caused her death accidentally or inadvertently, his comments admitting that he "killed her" do not demonstrate reckless conduct. Appellant's confession, though it evolved over the course of several interviews, ultimately reflected the circumstances under which he choked Anderson, which do not demonstrate a reckless mental state—particularly when viewed with the medical examiner's testimony about the significant force and length of time required to produce the severe injuries that Anderson suffered, including the fractures in her thyroid cartilage, and to cause death by manual strangulation. *See Schroeder*, 123 S.W.3d at 401 (evidence of appellant's struggle with victim and his statements, "It was an accident" and "I did not mean to," were relevant to defensive issue of accident but such evidence did not allow finding of recklessness given appellant's self-described mental state when victim was killed).

13

Appellant fails to explain, and we cannot discern, how his comments during his first interview (about the prior choking incident or the "sex with strangulation," neither of which showed that he choked Anderson to unconsciousness the night of her death) or how the detective's interview techniques (minimizing his conduct and suggesting a lesser culpable mental state) demonstrate his reckless mental state as to his choking of Anderson the night she died. Nor does he explain, and we cannot discern, how this evidence negated the mental states reflected by his admission in the third interview that he choked Anderson because he "lost it" and was "just absolutely possessed to f***king kill her," particularly when combined with the medical examiner's testimony about how manual strangulation causes death. Given the severity of the choking that caused Anderson's death—as demonstrated by appellant's confession and the medical examiner's testimony—we conclude that no rational jury could find that appellant was only reckless about choking Anderson to death. We find no evidence that establishes the lesser-included offense as a valid, rational alternative to intentionally or knowingly causing death.

The record in this case does not support a charge of manslaughter; it does not contain evidence that would have permitted the jury to reach a rational conclusion that if guilty, appellant was guilty only of recklessly causing Anderson's death. Consequently, the trial court did not err in denying appellant's requested jury charge instruction on manslaughter.[5] We overrule appellant's first point of error.

---

[5] Because we conclude that the jury charge was not erroneous in this case, we do not conduct a harm analysis. *See Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015); *Celis v. State*, 416 S.W.3d 419, 423 (Tex. Crim. App. 2013); *Barrios v. State*, 283 S.W.3d 348, 353 (Tex. Crim. App. 2009).

## Opinion Testimony

In his second point of error, appellant asserts that the trial court erred in allowing the lead detective to testify about his opinion that appellant committed murder. Specifically, he complains that the detective was permitted to testify that Anderson's death was "straightforward murder" and that appellant's conduct was "not only knowing but intentionally done."

The complained-of testimony was given during the State's direct examination of the detective in the following exchanges:

Prosecutor: (Referring to appellant's description of Anderson's death as "an odd occurrence" during his interview). Is there anything in the evidence that you collected at the scene or that you learned during the course of the investigation to indicate this is some type of odd occurrence?

Defense: Your Honor, I object to that. That calls for wild speculation on his part. I don't even know what the phrase means.

The Court: The question is, if there is anything the detective saw that makes him believe this is an odd occurrence?

Prosecutor: Right, that there was an odd occurrence.

The Court: You may answer that.

Detective: Based on the totality of the circumstances and the investigation at that point, I don't think there was anything odd about it. I think it was a straightforward murder.

. . .

Prosecutor: So based on what you had at the time, why did you charge the defendant with murder?

Detective: The law says that murder is intentionally or knowingly. Based on the totality of the circumstances, the evidence we had at the time, the investigation, what forensics we did have, including the medical

15

examination, and ultimately the defendant's own statements, I felt that his conduct was not only knowing but intentionally done.

Appellant contends that this testimony by the detective was improper lay opinion testimony because it was "not based on personal knowledge or rational perception of any event," nor was it helpful to the jury in determining a fact issue as it instead "supplanted the jury's ultimate decision" about appellant's guilt. *See Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002) ("A witness can testify in the form of an opinion under Rule 701 if the opinions or inferences are (a) rationally based on his or her perceptions and (b) helpful to the clear understanding of the testimony or the determination of a fact in issue.") (citing *Fairow v. State*, 943 S.W.2d 895, 898 (Tex. Crim. App. 1997)); *see also* Tex. R. Evid. 701.

To preserve a complaint for appellate review, a defendant must make a timely and specific objection in the trial court. Tex. R. App. P. 33.1(a)(1); *see Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014), *cert. denied*, 135 S. Ct. 1158 (2015); *Henson v. State*, 407 S.W.3d 764, 767 (Tex. Crim. App. 2013). Here, appellant did not object to the detective's statement that Anderson's death "was a straightforward murder." Nor did he object to the detective's statement that he "felt that [appellant's] conduct was not only knowing but intentionally done." Thus, the record reflects that appellant failed to properly preserve his complaint about the detective's opinion testimony for appellate review.[6]

---

[6] We also note that while appellant did object to the question that elicited the detective's testimony about "straightforward murder," the objection raised was that the question "call[ed] for wild speculation." Appellant's complaint on appeal asserts that the testimony was improper lay opinion testimony. Thus, appellant also failed to preserve error regarding this testimony because his complaint on appeal does not comport with the objection at trial. *See Bekendam v. State*,

16

Preservation of error is a systemic requirement on appeal. *Darcy v. State*, 488 S.W.3d 325, 327 (Tex. Crim. App. 2016); *Bekendam v. State*, 441 S.W.3d 295, 299 (Tex. Crim. App. 2014). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Blackshear v. State*, 385 S.W.3d 589, 590 (Tex. Crim. App. 2012); *Wilson v. State*, 311 S.W.3d 452, 473–74 (Tex. Crim. App. 2010). Accordingly, we overrule appellant's second point of error.

### Sufficiency of the Evidence

In his third point of error, appellant challenges the sufficiency of the evidence supporting his murder conviction.

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014). When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *see also Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). In our sufficiency review we must consider all the

---

441 S.W.3d 295, 300 (Tex. Crim. App. 2014) ("We are not hyper-technical in examination of whether error was preserved, but the point of error on appeal must comport with the objection made at trial."); *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014), *cert. denied*, 135 S. Ct. 1158 (2015) ("[A] party must make the complaint at the earliest possible opportunity, and the point of error on appeal must comport with the objection made at trial.").

evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *Thompson v. State*, 408 S.W.3d 614, 627 (Tex. App.—Austin 2013, no pet.); *see Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Finley v. State*, 449 S.W.3d 145, 147 (Tex. App.—Austin 2014), *aff'd*, 484 S.W.3d 926 (Tex. Crim. App. 2016). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider only whether the factfinder reached a rational decision. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) ("Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally."). In assessing the sufficiency of the evidence, we have a duty "'to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime that was charged.'" *Winfrey v. State*, 323 S.W.3d 875, 882 (Tex. Crim. App. 2010) (quoting *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)).

To determine whether the State has met its evidentiary burden of proving a defendant guilty beyond a reasonable doubt, we compare the elements of the offense as defined by the hypothetically correct jury charge to the evidence adduced at trial. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *Felder v. State*, No. 03-13-00707-CR, 2014 WL 7475237, at *2 (Tex. App.—Austin Dec. 19, 2014, no pet.) (mem. op., not designated for publication). A hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the

18

State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Thomas*, 444 S.W.3d at 8 (quoting *Malik*, 953 S.W.2d at 240); *Roberson v. State*, 420 S.W.3d 832, 840 (Tex. Crim. App. 2013). The law as authorized by the indictment consists of the statutory elements of the charged offense as modified by the factual details and legal theories contained in the indictment. *Patel v. State*, No. 03-14-00238-CR, 2016 WL 2732230, at *2 (Tex. App.—Austin May 4, 2016, no pet.) (mem. op., not designated for publication); *see Thomas*, 444 S.W.3d at 8 ("The 'law as authorized by the indictment' consists of the statutory elements of the offense and those elements as modified by the indictment."); *Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013) ("The law as 'authorized by the indictment' includes the statutory elements of the offense 'as modified by the charging instrument.'").

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. art. 38.04; *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015), *cert. denied*, 136 S. Ct. 198 (2015) (quoting *Clayton*, 235 S.W.3d at 778). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49. The standard of review is the same for direct and

19

circumstantial evidence cases—circumstantial evidence is as probative as direct evidence in establishing guilt. *Dobbs*, 434 S.W.3d at 170; *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014). "It is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

Appellant was charged by indictment with intentionally or knowingly causing Anderson's death by choking or strangling her. *See* Tex. Penal Code § 19.02(b)(1). In his third point of error, appellant asserts that the evidence was insufficient to support his murder conviction because "[i]n the absence of any evidence to show [his] mental state, or that he acted intentionally or knowingly, no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." Appellant restricts his sufficiency challenge solely to the element of the culpable mental state. He does not dispute that the evidence showed that he caused Anderson's death by choking or strangling her, only that the evidence failed to show that he did so with the requisite mental state.

As noted previously in this opinion, murder is a "result of conduct" offense, which requires that the culpable mental state relate to the causing of the victim's death. *Roberts*, 273 S.W.3d at 328–29; *see Cavazos*, 382 S.W.3d at 384. The mental state element of the offense of murder as charged in the indictment here required proof that appellant acted intentionally or knowingly in causing Anderson's death. *See* Tex. Penal Code § 19.02(b)(1). Once again, a person acts "intentionally, or with intent" with respect to a result of his conduct when it is his conscious

objective or desire to cause the result, *id.* § 6.03(a), and a person acts "knowingly, or with knowledge" with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result, *id.* § 6.03(b). Thus, the State had to prove that it was appellant's conscious objective or desire to cause Anderson's death when he choked her or that he was aware that choking her was reasonably certain to cause her death.

The requisite culpable mental state, or *mens rea*, is almost always proved by circumstantial evidence. *Stobaugh v. State*, 421 S.W.3d 787, 862 (Tex. App.—Fort Worth 2014, pet. ref'd); *see Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991) ("[M]ental culpability is of such a nature that it generally must be inferred from the circumstances under which a prohibited act or omission occurs."); *Tottenham v. State*, 285 S.W.3d 19, 28 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("[B]oth intent and knowledge may be inferred from circumstantial evidence and proof of a culpable mental state almost invariably depends on circumstantial evidence."). Intent may be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). A defendant's overt acts are generally reliable circumstantial evidence of one's intent. *See Laster*, 275 S.W.3d at 524. In addition, intent can be inferred from the extent of the injuries to the victim, the method used to produce the injuries, and the relative size and strength of the parties. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995); *Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet. struck); *see Stobaugh*, 421 S.W.3d at 862 ("An intent to kill may also be inferred from the wounds inflicted or from an autopsy on the body."); *see, e.g.*, *Ex parte Henderson*, 384 S.W.3d 833, 838 (Tex. Crim. App. 2012) (Cochran, J., concurring) (noting that

State's primary evidence to prove intent to kill victim consisted of circumstantial evidence produced by autopsy of victim).

Appellant maintains that the only evidence that appellant had the requisite mental state when he choked Anderson to death was the lead detective's opinion that appellant acted intentionally or knowingly.[7] Appellant asserts that because this opinion testimony should have been excluded at trial it should not be considered on appeal. According to appellant, without the detective's testimony the State failed to show that he intentionally or knowingly caused Anderson's death, and "any speculation to that effect is not supported by the record." We disagree.

Initially, we observe that appellant's contention that the detective's opinion testimony "should not be considered" in our sufficiency review because it was erroneously admitted is contrary to the well-established procedure for conducting a legal sufficiency review.[8] *See Clayton*, 235 S.W.3d at 778 (in conducting legal sufficiency review, courts assess "all of the evidence," which includes evidence that was properly and improperly admitted); *Boston v. State*, 373 S.W.3d 832, 836 (Tex. App.—Austin 2012), *aff'd*, 410 S.W.3d 321 (Tex. Crim. App. 2013) ("In determining the legal

---

[7] As discussed in the previous point of error, the detective gave this opinion during his direct examination:

> Q. So based on what you had at the time, why did you charge the defendant with murder?
>
> A. The law says that murder is intentionally or knowingly. Based on the totality of the circumstances, the evidence we had at the time, the investigation, what forensics we did have, including the medical examination, and ultimately the defendant's own statements, I felt that his conduct was not only knowing but intentionally done.

[8] Appellant raised the issue concerning the erroneous admission of the detective's opinion testimony in his second point of error, which we overruled on procedural grounds.

sufficiency of the evidence, we must consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense.") (citations omitted). Thus, the detective's testimony—even if improperly admitted—constitutes evidence that could support a jury finding that appellant acted with the requisite mental state when he choked Anderson to death.

Furthermore, appellant's insufficiency claim is based on a limited review of only a portion of the evidence (the detective's testimony), which is also contrary to the well-established procedure for conducting a legal sufficiency review. *See Clayton*, 235 S.W.3d at 778; *Boston*, 373 S.W.3d at 836. The detective's testimony is not the only evidentiary basis for the jury to rationally find that when appellant choked Anderson he acted with the conscious objective or desire to cause her death (intentionally) or with an awareness that choking her was reasonably certain to cause her death (knowingly). Contrary to appellant's suggestion, direct evidence of appellant's mental state is not required. *See Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015) (citing *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013); *Hooper*, 214 S.W.3d at 13) ("Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction."). In this case, as noted in our discussion of appellant's first point of error, the severity of the choking that caused Anderson's death—as demonstrated by appellant's confession that he choked Anderson because he "lost it" and was "just absolutely possessed to f***ing kill her" and the medical examiner's testimony about the significant force and length of time required to produce the injuries Anderson suffered and to cause death by

manual strangulation—supports a rational finding that appellant acted intentionally or knowingly when he choked Anderson to death.

Evidence is sufficient to support a conviction when, based on the evidence and reasonable inferences therefrom, any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013). Reviewing all of the evidence in the light most favorable to the verdict, as we must, we conclude that any rational trier of fact could have found beyond a reasonable doubt—from the evidence and reasonable inferences from it—that appellant acted intentionally or knowingly when he choked Anderson to death. Thus, the evidence is sufficient to support his murder conviction. We overrule appellant's third point of error.

**Jury Argument**

In his fourth point of error, appellant argues that he suffered harm because the prosecutor exceeded the scope of proper jury argument.

The law provides for, and presumes, a fair trial free from improper argument by the State. *Ex parte Lane*, 303 S.W.3d 702, 712 (Tex. Crim. App. 2009) (citing *Long v. State*, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991)). Proper jury argument must generally fall within one of four areas: (1) summation of the evidence presented at trial, (2) reasonable deductions from that evidence, (3) responses to the argument of opposing counsel, and (4) pleas for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011); *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). Even aggressive argument is permissible if it falls within one of these four categories. *See Berry v. State*, 233 S.W.3d 847, 860 (Tex. Crim. App. 2007).

The trial court has broad discretion in controlling the scope of closing argument. *Nickerson v. State*, 478 S.W.3d 744, 761 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *Gloede v. State*, 328 S.W.3d 668, 673 (Tex. App.—Beaumont 2010, no pet.); *Lemos v. State*, 130 S.W.3d 888, 892 (Tex. App.—El Paso 2004, no pet.); *see Hall v. State*, 58 Tex. Crim. 512, 513, 126 S.W. 573, 573 (1910) ("It is well settled that the extent and manner of argument are confined largely to the discretion of the trial court, and that it is not subject to revision, except in a clear case of abuse."). Thus, we review a trial court's ruling on an objection to improper jury argument for an abuse of discretion. *See Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010); *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004); *Fahrni v. State*, 473 S.W.3d 486, 501 (Tex. App.—Texarkana 2015, pet. ref'd). We review challenged remarks in the context in which they appear, *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988); *Fahrni*, 473 S.W.3d at 501, analyzing them in light of the entire argument rather than just isolated sentences, *Drew v. State*, 743 S.W.2d 207, 220 (Tex. Crim. App. 1987); *Temple v. State*, 342 S.W.3d 572, 603 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013).

Appellant challenges six arguments made by the State during its final closing argument: two that mentioned Anderson's decisions before her death, one that incorporated a stopwatch demonstration, one that referenced a venireman's comment during jury selection, one that urged certain jurors to rely on personal experiences, and one that discussed the medical examiner's testimony.

*Argument Concerning Anderson's Decisions*

The first two complained-of arguments concern the prosecutor's comments about the

decisions Anderson made before her death:

> Ladies and gentlemen, I want you to come with me to that -- to Kirstin's home, to that address at Little John where she lived. I want you to come with me to that night of November 14th and I want us to walk into her bedroom and see what is going on there. And I want you to see as the defendant strikes her and *as she decides on that night she has had enough, she's going to kick him out* --

(Emphasis added). Appellant objected, claiming that the prosecutor was "arguing facts that have not

been entered into evidence." The prosecutor responded, asserting that the statement was "a

deduction from the evidence based on the defendant's statements." The trial court overruled the

objection. The prosecutor continued her argument:

> So she decides -- *she has decided she's had enough, she's not going take it anymore, she is going to call the police*. That's what caused all of this to happen, *she was finally going to take some action*.

(Emphasis added). Appellant renewed his objection, asserting that the argument was "not a

deduction from the evidence" but was "pure hypothetical being offered by the State, not based on

any evidence that's been admitted." The trial court likewise overruled that objection.

To preserve error regarding jury argument, a defendant must object at trial and pursue

his objection to an adverse ruling. *Cooks v. State*, 844 S.W.2d 697, 727 (Tex. Crim. App. 1992);

*Temple*, 342 S.W.3d at 603; *Barnes v. State*, 70 S.W.3d 294, 307 (Tex. App.—Fort Worth 2002, pet.

ref'd); *see* Tex. R. App. P. 33.1(a). In addition, a defendant must object each time the objectionable

26

jury argument is made or he waives his complaint. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *McFarland v. State*, 845 S.W.2d 824, 840 (Tex. Crim. App. 1992), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994); *Cornwell v. State*, 445 S.W.3d 488, 492 (Tex. App.—Beaumont 2014), *aff'd*, 471 S.W.3d 458 (Tex. Crim. App. 2015); *Temple*, 342 S.W.3d at 603; *Wilson v. State*, 179 S.W.3d 240, 249 (Tex. App.—Texarkana 2005, no pet.); *Barnes*, 70 S.W.3d at 307–08.

With regard to the prosecutor's arguments about Anderson's decisions, although appellant objected on the occasions noted above, the State subsequently made the same argument, and appellant did not object again. The prosecutor later argued that appellant's choking of Anderson was "an intentional act and all of this happened because Anderson was going to call the police, because she was going to free herself from this man." Because appellant did not later object to the same arguments (that Anderson had decided to end her relationship with appellant and to call the police), he forfeited his complaints concerning these first two complained-of arguments. *See Patton v. State*, No. 05-02-00170-CR, 2003 WL 122359, at *2 (Tex. App.—Dallas Jan. 15, 2003, no pet.) (mem. op., not designated for publication) (concluding that appellant waived complaint to prosecutor's jury argument—that State established appellant had alcohol concentration of .08 or higher—when he failed to object to same argument on at least two other occasions). As noted earlier in this opinion, preservation of error is a systemic requirement on appeal, *Darcy*, 488 S.W.3d at 327; *Bekendam*, 441 S.W.3d at 300, and a reviewing court should not address the merits of an issue that has not been preserved for appeal, *Blackshear*, 385 S.W.3d at 590; *Wilson*, 311 S.W.3d at 473–74.

27

*Argument Involving Stopwatch Demonstration*

The third argument appellant complains about concerns a stopwatch demonstration the prosecutor conducted during her jury argument:

> I want you to indulge me for a few seconds. I'm going to start this stopwatch that I have here and when I start it I want all of us to hold our breath, and when I stop it, for as long as you can or until I say stop because I want to show you how long this takes to kill someone, why it is intentional.

Appellant objected, complaining that "[t]his [was] outside the scope of the evidence that was presented." The trial court overruled the objection.

In his brief, appellant claims that "there was no evidence as to how long Anderson was deprived of air, in stark contrast to the prosecutor's assertion, complete with a stopwatch." However, the medical examiner testified concerning the effects of blocking the carotid arteries in the neck that supply oxygen to the brain:

> When they are both compressed and totally blocked, a person will lose consciousness usually within about 15 seconds. If that pressure is sustained and the arteries are completely blocked, brain death can occur within two minutes.
>
> . . . .
>
> But that doesn't mean they die, they just pass out at that point after about 15 seconds. It takes another minute 45 maybe of blocking those arteries after that person has passed out to kill them --

The doctor later reiterated that after a person loses consciousness from being manually strangled, at which time the "body basically goes limp and a person would appear to be asleep," killing that

28

person would require sustaining the pressure on the carotid arteries of that limp person for "another maybe minute 45 seconds."

The prosecutor's jury argument here was a permissible argument summarizing the medical examiner's testimony. The argument and accompanying stopwatch demonstration merely sought to illustrate "how long it takes to kill someone" by manual strangulation, based on the doctor's testimony, in order to show that appellant's conduct that night was intentional. *See Watson v. State*, No. 02-11-00040-CR, 2012 WL 117931, at *8 (Tex. App.—Fort Worth Jan. 12, 2012, pet. ref'd) (mem. op., not designated for publication) ("To summarize the evidence that has been admitted, an attorney may, at the court's discretion, use visual aids in closing argument."); *Jarnigan v. State*, 57 S.W.3d 76, 92 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) ("It is well established that the trial court has the discretion to permit the use of visual aids and charts in the summarizing of evidence."); *see also Cowan v. State*, No. 01-89-00068-CR, 1990 WL 113630, at *8 (Tex. App.—Houston [1st Dist.] Aug. 9, 1990, pet. ref'd) (not designated for publication) (prosecutor's jury argument demonstration of having deputy wear stocking to illustrate ability to discern identity of attacker wearing stocking was not supported by record because there was no evidence of how attacker wore stocking or color of stocking). Because the complained-of argument summarized the evidence at trial, the trial court did not abuse its discretion in overruling appellant's objection to this jury argument and the associated stopwatch demonstration.

*Argument Referencing Venireman's Comment*

Appellant's fourth complained-of argument was made as the prosecutor conducted the stopwatch demonstration:

29

If we could start. If we could stop. That's only 14 seconds. Kirstin is still not dead. He's continuing to choke her to unconsciousness. She is still not dead and we're at 30 seconds. Imagine how long it took. Think about that damage to her cartilage, he fractured it, the pressure that is required. 40 seconds, we're still not there. She's still not dead.

Can you imagine the fear? Can you imagine what she's feeling? She can't breathe. *That gentleman who was on the jury told us when his wife has those attacks, when she can't breathe* --

(Emphasis added). Appellant objected, arguing, "[T]hat is not evidence that was offered in trial." In response, the trial court stated that "the ladies and gentlemen of the jury will recall the evidence as they heard it."

To preserve error on appeal, in addition to making a timely and specific objection in the trial court, a party must obtain an adverse ruling on the objection from the trial court or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Smith v. State*, — S.W.3d —, No. PD-1615-14, 2016 WL 3193479, at *4 (Tex. Crim. App. June 8, 2016); *see also Montanez v. State*, 195 S.W.3d 101, 104 (Tex. Crim. App. 2006) (while trial court's ruling on matter need not be expressly stated if its actions or other statements otherwise unquestionably indicate ruling, record must sufficiently reflect that trial court ruled adversely).

Here, the trial court did not rule on appellant's objection to the prosecutor's reference to the venireman's comment but simply indicated that the jurors would recall the evidence as they heard it, and appellant did not object to the lack of a ruling. Thus, appellant failed to preserve his complaint regarding this jury argument for appellate review. *See, e.g.*, *Mayberry v. State*, 532 S.W.2d 80, 84 (Tex. Crim. App. 1976) (op. on reh'g) ("[j]ury will recall the evidence" does not preserve error); *Ivy v. State*, No. 01-13-00504-CR, 2014 WL 3398352, at *5 (Tex. App.—Houston

30

[1st Dist.] July 10, 2014, pet. ref'd) (mem. op., not designated for publication) (trial court's response to objection that prosecutor's argument misstated record—"The jury heard the testimony and they'll know whether or not something misstated the record. So I'll leave it to their discretion."—did not preserve challenge to argument because appellant failed to obtain adverse ruling); *Gonzalez v. State*, 337 S.W.3d 473, 483–84 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (appellant waived any error by failing to obtain ruling when he objected and trial court, in response, said, "Ladies and gentlemen, you are the triers of fact. You are the judge. And . . . you have heard the evidence and will make your own decision."). Once again, preservation of error is a systemic requirement on appeal, *Darcy*, 488 S.W.3d at 327; *Bekendam*, 441 S.W.3d at 300, and a reviewing court should not address the merits of an issue that has not been preserved for appeal, *Blackshear*, 385 S.W.3d at 590; *Wilson*, 311 S.W.3d at 473–74.

*Argument Relating to Personal Experience*

In appellant's fifth complained-of argument, the prosecutor urged the nurses on the jury to rely on their own personal experience treating patients during their deliberations:

> Those of you that are nurses, that work -- that are on the jury that work with patients that have problems with their airway --
>
> (Appellant objected).
>
> -- use your experience.
>
> (Appellant again objected).
>
> Use your personal experience. Think about that.

31

Appellant objected to this line of argument, asserting that it was "improper jury argument" because "[the prosecutor] cannot appeal directly to the individual jurors in that manner." When the prosecutor continued the argument, notwithstanding the objections, appellant requested a ruling from the court. The trial court reviewed the prosecutor's remarks, sustained the objection "regarding the nurses," and instructed the jury that it would "disregard that remark." Appellant then moved for a mistrial, which the trial court denied.

The State's argument encouraging jurors to use their own personal experiences when deliberating went beyond the bounds of permissible jury argument and was improper. Thus, the trial court properly sustained appellant's objection. The question is whether the court's denial of appellant's motion for mistrial was appropriate given the improper argument. We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004). Unless the trial court's ruling was outside the zone of reasonable disagreement, it will not be disturbed on appeal. *Archie*, 221 S.W.3d at 699; *Browne v. State*, 483 S.W.3d 183, 203 (Tex. App.—Austin 2015, no pet.). When the refusal to grant a mistrial follows an objection for improper jury argument, we evaluate the trial court's decision using the following factors: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Archie v. State*, 340 S.W.3d 734, 738–39 (Tex. Crim. App. 2011) (citing *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998)). "'Only in extreme circumstances, where

the prejudice is incurable, will a mistrial be required.'" *Archie*, 221 S.W.3d at 699 (quoting *Hawkins*, 135 S.W.3d at 77); *Browne*, 483 S.W.3d at 203; *see Archie*, 340 S.W.3d at 739 ("Mistrial is the appropriate remedy when . . . the objectionable events 'are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant.'") (quoting *Young v. State*, 137 S.W.3d 65, 71 (Tex. Crim. App. 2004)); *Williams v. State*, 417 S.W.3d 162, 175 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) ("A mistrial is an extreme remedy and should be exceedingly uncommon."); *see also Martinez v. State*, 17 S.W.3d 677, 692–93 (Tex. Crim. App. 2000) (citing Tex. R. App. P. 44.2(b)) (improper jury argument does not warrant reversal unless error affected appellant's substantial rights).

When assessing the first factor—the severity of the misconduct—our primary focus is on the prejudicial effect of the improper jury argument. *Hawkins*, 135 S.W.3d at 77–78. In deciding whether prejudice resulted, we examine the statement "in light of the facts adduced at trial and in the context of the entire argument." *See McGee v. State*, 774 S.W.2d 229, 239 (Tex. Crim. App. 1989); *Gaddis*, 753 S.W.2d at 398. Here, the State's comment urging certain jurors to rely on their own experience was merely a single and brief statement that was not emphasized or reiterated by the State. *See Archie*, 221 S.W.3d at 700 (prosecutor's statement "brief" and only related to one witness); *Hawkins*, 135 S.W.3d at 83–84 (error "isolated" and not "part of a pattern"). The improper argument consisted of only four lines out of approximately eleven pages of the State's final closing argument. On this record, the severity of the misconduct, or prejudicial effect of the remark, is relatively small.

33

Regarding the second factor—the measures adopted to cure the misconduct—we note that the trial court sustained the objection, and then, of its own volition, gave a curative instruction. In addition, the court instructed the jury in its charge to consider only the evidence presented in their deliberations: "In deliberating on this cause you are not to refer to or discuss any matter or issue not in evidence before you[.]" *See Hawkins*, 135 S.W.3d at 84 ("Court of appeals . . . erred in failing to consider the jury charge," when analyzing "[c]urative measures"); *Williams*, 417 S.W.3d at 179–80 (trial court's "written jury instructions . . . advised the jury that it should not 'consider, discuss, nor relate any matters not in evidence'"). We presume that the jury understood and followed the trial court's charge absent evidence to the contrary. *Taylor v. State*, 332 S.W.3d 483, 492 (Tex. Crim. App. 2011); *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). Additionally, the State did not emphasize the error nor return to it at a later time. Once the objection was sustained and the jury instructed to disregard, the State moved on, returning to the stopwatch demonstration.

The third factor—the certainty of the conviction absent the misconduct—also weighs in favor of the trial court's ruling denying the motion for mistrial. Here, the evidence supporting appellant's conviction was strong: appellant admitted choking Anderson to death, and other evidence, particularly the medical examiner's testimony, supported the State's case. Appellant's conviction was sufficiently certain regardless of the State's improper comment during its closing jury argument. *See, e.g.*, *Newby v. State*, 252 S.W.3d 431, 439 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (denial of mistrial in sexual assault conviction not abuse of discretion where appellant's conviction "fairly certain" given unambiguous testimony of complainant).

Balancing the relevant factors, and viewing the argument in light of the entire record, the prosecutor's improper jury argument was not so prejudicial that the trial court's prompt instruction did not cure any error. *See Long*, 823 S.W.2d at 267. Thus, the trial court did not abuse its discretion in denying appellant's motion for mistrial based on the fifth complained-of argument.

*Argument Referring to Medical Examiner's Testimony*

Finally, appellant challenges the prosecutor's argument discussing the medical examiner's testimony. The prosecutor argued:

> No one would choose the death that Kirstin suffered, beaten. Even Dr. Wood told you about those injuries on the top of her head where she saw internal hemorrhaging. She talked about how the muscles in her neck, there was hemorrhaging along the muscles along with that fractured thyroid cartilage, the injuries underneath the temple that was hemorrhaging underneath. This is an intentional act and all of this happened because Kirstin was going to call the police, because she was going to free herself from this man.
>
> And think about it, even in the first scenario when I asked you to indulge me, think about it. After only a few seconds when we start breathing again, it's a good feeling, but imagine the panic when you can't control it, you can't [sic] what is causing the pressure off your neck, you are fighting for your life. Imagine those final moments of Kirstin's life, what that must have been like.

At this point, appellant objected, asserting that "the medical examiner testified that those are not the causes of her injuries -- that that was not the cause of her death. It was not the tracheal injuries." The trial court again responded that "[t]he ladies and gentlemen will recall the evidence as they heard it."

Once again, as with his objection to the prosecutor's reference to the venireman's comment, appellant failed to obtain an adverse ruling on his objection to the prosecutor's argument

about the medical examiner's testimony. *See* discussion *supra*, p. 30–31. Furthermore, appellant's objection to this argument was untimely. An objection is timely if made at the earliest opportunity or as soon as the grounds for the objection become apparent. *London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016) (citing *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006)); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011). Here, the prosecutor had already moved on to a different area of argument before appellant objected to her comments about the medical examiner's testimony. For these reasons, appellant failed to preserve his complaint regarding this jury argument for appellate review. And again, preservation of error is a systemic requirement on appeal, *Darcy*, 488 S.W.3d at 327; *Bekendam*, 441 S.W.3d at 300, and a reviewing court should not address the merits of an issue that has not been preserved for appeal, *Blackshear*, 385 S.W.3d at 590; *Wilson*, 311 S.W.3d at 473–74.

*Conclusion Regarding Jury Argument*

Appellant's challenges to the first, second, fourth, and sixth complained-of jury arguments were not preserved for appellate review. The third complained-of argument, along with the accompanying demonstration, was permissible as a summary of the evidence. Finally, the fifth complained-of argument, although improper, did not cause appellant harm; thus, the trial court did not abuse its discretion in denying appellant's motion for mistrial. For these reasons, we overrule appellant's fourth point of error.

36

**Error in Written Judgment**

On review of the record, we observe that the written judgment of conviction in this case contains non-reversible clerical error. The judgment of conviction states that the "Statute for Offense" is "19.02(c) Penal Code." This statutory provision establishes that murder is a first degree felony. However, the applicable statutory provisions for the murder offense as alleged in the indictment in this case also include section 19.02(b)(1) of the Penal Code, the statutory provision that defines the offense of intentional or knowing murder. This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 46.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, we modify the judgment to reflect that the "Statute for Offense" is "19.02(b)(1), (c) Penal Code."

**CONCLUSION**

Having overruled appellant's points of error, we modify the trial court's judgment of conviction as noted above and affirm the judgment as modified.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Bourland

Modified and, as Modified, Affirmed

Filed: October 26, 2016

Do Not Publish

37