

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1501-14

### ROBERT WILLIAM CORNWELL, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE NINTH COURT OF APPEALS
### MONTGOMERY COUNTY

YEARY, J., delivered the opinion of the Court in which KELLER, P.J., and
MEYERS, KEASLER, HERVEY, ALCALA, RICHARDSON and NEWELL, JJ., joined. JOHNSON,
J., concurred in the result.

### O P I N I O N

Appellant, Robert Cornwell, was convicted of impersonating a Dallas County assistant

district attorney and sentenced to two years' confinement in the penitentiary.  The Ninth

Court of Appeals affirmed his conviction, holding that the evidence was sufficient to show

that Appellant impersonated a public servant with the intent to induce another to rely on his

pretended official acts.  *Cornwell v. State,* 445 S.W.3d 488, 491 (Tex. App.—Beaumont

2014); TEX. PEN. CODE § 37.11(a)(1). Appellant concedes that he impersonated a public servant, but he argues that the evidence failed to establish that he did so with the requisite specific intent. We granted Appellant's petition for discretionary review to address this contention and now affirm the judgment of the court of appeals.

## BACKGROUND

Around the end of May of 2012, Appellant became aware that a capias had issued in Montgomery County for the arrest of a friend, Michelle Salas. Salas was on probation for the offense of driving while intoxicated, and the State had filed a motion to revoke her probation. Once aware of the existence of the capias, Appellant telephoned several persons within the probation department in Montgomery County, identifying himself to them as an assistant district attorney from Dallas County. He was ultimately referred to Montgomery County Assistant District Attorney Kourtney Teaff, the prosecutor assigned to Salas's case. Appellant left Teaff a voicemail, once again identifying himself as an assistant district attorney from Dallas and requesting that Teaff return his call. Appellant concedes that his purpose in contacting Teaff was to attempt to resolve Salas's case on favorable terms. Appellant was not, nor had he ever been, an attorney—much less an assistant district attorney—in the State of Texas. Teaff became suspicious of these requests for leniency and resolution regarding Salas's case. She considered such requests to be highly unusual and unethical coming from another assistant district attorney. Teaff did return Appellant's call, but because of her suspicion, she recorded that conversation. She continued to record each

of the subsequent telephone conversations she had with Appellant and kept records of their email exchanges as well.

Throughout these communications, Appellant continued to hold himself out as an assistant district attorney from Dallas, and he continued to seek a favorable resolution to Salas's case. Over the course of several exchanges with Teaff, Appellant made references to his supposed past actions as an assistant district attorney. He claimed that he had "run" Salas's criminal history, reviewed Salas's case file, investigated a fingerprint card lost by the Montgomery County Sheriff's Office, spoken with the probation department regarding Salas, investigated Salas's medical issues, and even prosecuted his own nephew for possession of marijuana. In addition, he insisted to Teaff that the two of them were members of the "same team." But he also insisted on being contacted on his personal phone and email when communicating with Teaff, rather than through the Dallas County District Attorney's Office. It is undisputed that: 1) Appellant intended that Teaff should consider his request for leniency in her handling of Salas's case to be a "personal favor" to Appellant (albeit a personal favor for a member of the "same team"); 2) Appellant always used his true name; and 3) Appellant never attempted to claim any official authority over Teaff in an attempt to coerce her to take favorable action on Salas's behalf.

Appellant was indicted for the offense of Impersonating Public Servant under Section 37.11 of the Texas Penal Code. TEX. PENAL CODE § 37.11.[1] The indictment alleged, in

_____

[1]Texas Penal Code Section 37.11, entitled "Impersonating Public Servant," reads in its entirety as follows:

relevant part, that Appellant "impersonate[d] a public servant, namely: Assistant District Attorney with Dallas County, Texas, with the intent to induce Kourtney Teaff, an Assistant District Attorney with Montgomery County, Texas, to submit to the pretended authority or rely on the pretended officials acts of the defendant by trying to resolve a pending criminal case." Both the statute and the indictment contain two possible theories of culpable intent: what we will call the "submission" theory ("with intent to induce another to submit to his pretended official authority") and what we will call the "reliance" theory ("with the intent to induce another . . . to rely on his pretended official acts[.]"). Section 37.11(a)(1) is violated when the culpable act of impersonating a public servant is committed in combination with the requisite intent. The requisite intent can be satisfied with either the submission theory or the reliance theory, and the jury was instructed that it could convict Appellant if it found he harbored either culpable intent, but it was not required to specify which. The jury convicted Appellant, and the trial court sentenced him to a term of two years' confinement in the

---

(a)     A person commits an offense if he:

   (1)     impersonates a public servant with intent to induce another to submit to his pretended official authority or to rely on his pretended official acts; or

   (2)     knowingly purports to exercise any function of a public servant or of a public office, including that of a judge and court, and the position or office through which he purports to exercise a function of a public servant or public office has no lawful existence under the constitution or laws of this state or of the United States.

(b)     An offense under this section is a felony of the third degree.

penitentiary.

On appeal, Appellant argued that the evidence was insufficient to establish either theory of culpable intent, submission or reliance. Because the evidence shows that Appellant made no attempt to persuade Teaff to submit to any asserted authority he might have over her as a fellow assistant district attorney, he argued, there was insufficient evidence of an intent to induce Teaff to submit. And because he only asked Teaff to handle Salas's case leniently as a personal favor, Appellant urged, he harbored no intent to induce Teaff to rely on any "pretended official act" on his part as a purported assistant district attorney. The court of appeals rejected Appellant's sufficiency point of error, concluding that the evidence was at least sufficient to support a jury finding that Appellant had impersonated a public official with intent to induce another to rely on his pretended official acts—the reliance theory. *Cornwell,* 445 S.W.3d at 491. The court of appeals reasoned: "[T]he jury could have reasonably believed that [Appellant] falsely represented he was an assistant district attorney because he believed that another district attorney was more likely to consider his requests to move the case along if she thought he held a similar official position." *Id*. Because the court of appeals was thus able to hold the evidence sufficient based on the reliance theory of culpable intent, it had no need to address sufficiency of the evidence under the submission theory. *Id*.

In his petition for discretionary review, Appellant contends that the court of appeals has misconstrued the reliance theory of mental culpability in Section 37.11(a)(1). He

continues to argue that, because he only asked Teaff to handle Salas's revocation case leniently as a personal favor to him, he cannot have intended to induce her to rely on any "pretended official act" on his part, regardless of having held himself out to her as a prosecutor and having claimed in his conversations with her that he had acted in a prosecutorial capacity in specific ways in the past. He argues that, unless his request for leniency was itself couched as the "pretended official act" of a fellow prosecutor—not just a request for a personal favor that happens to come from a fellow prosecutor—he cannot be found to have entertained the requisite intent, even under the reliance theory, to justify a conviction. We granted discretionary review in order to address Appellant's contention. *See* TEX. R. APP. P. 66.3(d) ("the following will be considered by [this] Court in deciding whether to grant discretionary review: . . . whether a court of appeals . . . appears to have misconstrued a statute[.]").

## ANALYSIS

Appellant's stance in this case is based largely upon the premise that, in order to prove an offense under Section 37.11(a)(1), the State must essentially prove that he committed two acts. First, it must prove that he impersonated an assistant district attorney. Appellant acknowledges that the evidence establishes this. Second, Appellant maintains that, under the statute, the State must prove that he also engaged in some other form of conduct, some additional "pretended official act"—that when he asked Teaff to favorably dispose of Salas's revocation case, he did so *not* simply as a personal favor, but as a favor to him in his

"pretended official" capacity as an assistant district attorney. Even Teaff conceded that Appellant did not do this. It is true that in *Ex parte Niswanger*, we suggested that, in order to establish an offense under Section 37.11(a)(1), the State must prove not just the impersonation but also an "act accompanying the impersonation that could be considered an official act[.]" 335 S.W.3d 611, 617 (Tex. Crim. App. 2011). But we did so without analysis, in reliance upon an earlier opinion, *Boyett v. State*, 368 S.W.2d 769 (Tex. Crim. App. 1963), which did not purport to construe Section 37.11(a)(1) of the current Penal Code at all. For the reasons to be developed, we think *Niswanger*'s reliance upon *Boyett*—and hence, Appellant's premise—is flawed.

## The *Boyett* Construction

The phrase "pretended official acts," as it appears in Section 37.11(a)(1), has not been the subject of much scrutiny. Most opinions addressing Section 37.11(a)(1) have focused on the submission theory of intent and the meaning of the phrase "pretended official authority" incorporated therein. But a few Texas appellate courts have directly addressed the reliance theory of intent, and specifically, the meaning of "pretended official acts," and this Court has hinted at its meaning as well. *See Ex parte Niswanger,* 335 S.W.3d at 617 & n. 11; *Tiller v. State,* 362 S.W.3d 125, 128 (Tex. App.—San Antonio 2011, pet ref'd); *Tovar v. State,* 777 S.W.2d 481, 489 (Tex. App.—Corpus Christi 1989, pet. ref'd). These cases construe Section 37.11(a)(1) to require that, in order to satisfy the reliance theory of mental culpability in Section 37.11(a)(1), the accused must have engaged in some overt *act*, done

in a purported official capacity and designed to induce reliance, in addition to falsely identifying himself to be a public servant. In essence, the act of impersonating a public servant is not the only culpable act proscribed by the statute. There is also a second culpable-act requirement embedded in the reliance theory of culpable intent—the need for the State to prove a "pretended official act." This construction of the statute finds its genesis in this Court's 1963 holding in *Boyett*—an opinion that predates the current statute by more than a decade. *See Niswanger*, 335 S.W.3d at 617 n. 11 (citing *Tovar* and *Boyett*); *Tovar,* 777 S.W.3d at 489 (citing *Boyett*). But the statute we construed in *Boyett*, while an indirect predecessor to current Section 37.11(a)(1), was worded quite differently.

As of 1962, when Boyett committed his offense, former Article 429 of the 1925 Penal Code provided:

> Whoever falsely assumes or pretends to be a Judicial or Executive Officer of the State or Justice of the Peace, sheriff or deputy, constable or any other Judicial or ministerial officer of any county or a State Ranger in this State and *takes upon himself to act as such* shall be guilty of a misdemeanor and shall be confined in jail not exceeding six months or be fined not exceeding Five Hundred ($500.00) Dollars or by both such fine and imprisonment.

368 S.W.2d at 771 (emphasis added); Acts 1931, 42nd Leg., ch. 259, § 1, p. 430, approved May 28, 1931.[2] It was the "takes upon himself to act as such" phrase in former Article 429 that the Court in *Boyett* analyzed and held to require proof of conduct beyond the mere act

---

[2] A version of Article 429 was passed as early as 1866, and this original version of the statute also explicitly required that, in order to be guilty of the offense, an accused must not only "falsely . . . pretend" to be a judicial or ministerial officer, but that he must also "take it upon himself to act as such[.]" Act approved Nov. 12, 1866, 11th Leg., R.S., ch. 160, § 1, 6 Gammel, *The Laws of Texas 1822-1897*, at 201 (Austin, Gammel Book Co. 1898).

of falsely assuming or pretending. 368 S.W.2d at 771. We also relied upon similar language in an analogous federal statute that also expressly made it an offense, not just to falsely pretend to be a federal officer/employee, but to falsely so pretend *and* to "act[] as such[.]"[3] *Id*. The federal courts have held that in order to satisfy the "acts as such" component of the federal statute, the Government must prove an overt action. *See id*. (citing *United States v. Barrow,* 239 U.S. 74 (1915)); *United States v. Cohen,* 631 F.2d 1223, 1224 (5th Cir. 1980). But the "act as such" language appears nowhere in the current statute.

Whether Section 37.11(a) of the current Penal Code requires the State to prove (at least under the reliance theory of culpable intent) that he not only held himself out falsely to be a public servant, but that he also pretended to commit an official "act as such," will depend upon how we construe the language of Section 37.11(a)(1) itself—not how we have previously construed the language of an earlier, substantially different statute. To the extent that both *Niswanger* and some courts of appeals opinions have relied upon *Boyett* as an authoritative construction of the current statute, they were misguided. We turn now to a proper analysis based upon the language of Section 37.11(a)(1) itself.

---

[3] In 1963, the year the Court decided *Boyett*, 18 U.S.C. § 912 provided (and substantially still provides): "[W]hoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and *acts as such*, or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined not more than $1,000 or imprisoned not more than three years, or both." June 25, 1948, c. 645, 62 Stat. 742 (emphasis added). For a more complete analysis of 18 U.S.C. § 912 and case law regarding its interpretation, *see* Russell G. Donaldson, Annotation, *"acts as such" element of 18 U.S.C.A. § 912, making it a crime to pretend to be an officer or employee of the United States,* 55 A.L.R. Fed. 494 (1981).

**The Current Statute**

As written, Section 37.11(a)(1) breaks down into two components, a culpable act component (*actus reus*) and a culpable mental state component (*mens rea*). It is essentially a nature-of-conduct offense with an accompanying specific intent. The State must prove both the conduct (impersonation) and the specific intent (to induce another to submit or rely) for there to be a violation under Section 37.11(a)(1). An accused may not be convicted on a simple showing that he falsely held himself out to be a public servant. In this case, it is uncontested that Appellant did impersonate a public servant and the only question is whether he did so with one of the requisite specific intents that makes it a crime.[4] We therefore focus on the second component of Section 37.11(a)(1), the culpable mental state, and specifically, the reliance theory: does the evidence show that Appellant had the specific "intent to induce another . . . to rely on his pretended official acts"? Does the phrase "pretended official act" implicitly require a second *actus reus* beyond impersonation? Must an accused not only hold himself out falsely to be a public servant, but also "act as such," before it may be said that he intended to induce another to rely on that false impersonation? Or does the statute only require that an accused have intended to induce another to rely on his "pretended official

---

[4]An assistant district attorney is a public servant. *See* TEX. PENAL CODE § 1.07(a)(41)(D) ("public servant" includes "an attorney at law . . . when participating in the performance of a governmental function"). An assistant district attorney may also satisfy one of the other listed classifications found in Section 1.07(a)(41). *See* TEX. PENAL CODE § 1.07(a)(41)(A) & (D) (public servant includes "an officer, employee, or agent of government"). It is undisputed that Appellant identified himself to be an assistant district attorney from Dallas and that he was not, and never had been, an assistant district attorney.

acts" without also overtly engaging in such "pretended official acts"?

The Practice Commentary to the 1974 Penal Code sheds some light on these questions. As it was originally enacted in 1973, effective January 1, 1974, Section 37.11(a) read exactly the same as current Section 37.11(a)(1): "A person commits an offense if he impersonates a public servant with intent to induce another to submit to his pretended official authority or to rely on his pretended official acts." The Practice Commentary derives from the Comments of the State Bar Committee on Revision of the Penal Code that accompanied the 1970 Proposed Penal Code, which were "considered by the members of the 63rd Legislature that enacted the code" and are "therefore an important source of legislative history." 1 V.T.C.A. PENAL CODE, Forward (1974), at xxiv; *Shipp v. State*, 331 S.W.3d 433, 439 n.35 (Tex. Crim. App. 2011) (plurality opinion). Specifically with respect to Section 37.11(a), the Practice Commentary acknowledged that "[t]he section has no specific requirement of an 'act' in addition to the false pretense, as did prior art. 429[.]" 3 V.T.C.A. PENAL CODE (1989), at 283. But it then goes on to observe: "but ordinarily it will be necessary to show some act in order to prove the required intent." *Id*. We take this observation to mean that an overt act is no longer regarded to be elemental under the statute, but that it will "ordinarily" be the case that, in order to prove the element of specific intent, "it will be necessary" for the State to prove a specific "pretended official act"—as an evidentiary fact from which the elemental specific intent may be inferred. So, while it is not necessary for the State to allege or prove a specific "pretended official act"—as an element,

as under the former statute—it may be the case that, as a practical matter, the State will be unable to prove the requisite specific intent without evidence of such a "pretended official act" upon which the accused intended to induce another to rely. For reasons similar to those that the court of appeals gave, we conclude that the evidence *does* establish that Appellant engaged in "pretended official acts" upon which he intended Teaff to rely.

## The Pretended Official Acts

It is undisputed that Appellant hoped to persuade Teaff to be lenient in resolving Salas's revocation case. In order to do this, he identified himself to her as an assistant district attorney. He proceeded to attempt to convince her that he was an experienced assistant district attorney by relating various claims of conduct he had undertaken as an assistant district attorney. These fabricated, or pretended, official acts included putting his nephew in jail, reviewing case files, and investigating matters in the capacity of an assistant district attorney. The only reason he could have had for relaying these pretended official acts to Teaff was to enhance the credibility of his claim to be an assistant district attorney. These purported actions exceed mere false identification as a public servant. Furthermore, as the court of appeals recognized, the Texas Penal Code includes speech in its definition of "act."[5]

*See* TEX. PEN. CODE § 1.07(a)(1) ("In this code . . . "Act" means a bodily movement, whether

---

[5] *See Cornwell*, 445 S.W.3d at 491 ("In Cornwell's case, however, the jury could reasonably conclude that he made the statements about being an assistant district attorney to obtain the cooperation of the Montgomery County assistant district attorney in resolving the criminal case of his friend, a case over which Cornwell thought the assistant district attorney had influence. While the term "official act" is not defined in the Penal Code, the Penal Code defines '[a]ct' as 'a bodily movement . . . and includes speech.'" Tex. Penal Code Ann. § 1.07(a)(1) (West Supp.2014).")

voluntary or involuntary, and includes speech."). The simple act of telling Teaff that he had undertaken certain acts in his capacity as an assistant district attorney constituted at least one pretended official act upon which he intended for Teaff to rely in making her decision whether to grant his "personal favor."

Nevertheless, Appellant maintains, his request that Teaff handle Salas's case leniently was not *itself* couched as a pretended official act but was merely a request for a "personal favor." But Appellant did not ask for this favor in his capacity as an ordinary citizen or concerned friend. The jury could readily have found that Appellant intended for Teaff to take into account his pretended official capacity as an assistant district attorney—including his pretended official act of telling her about his previous pretended official acts—and to rely on that in deciding whether to grant his "personal favor." By calling and speaking to an assistant district attorney as a purported member of the "same team," Appellant obviously hoped to gain her trust and good will. The jury was entitled to infer that Appellant believed his pretended status as an assistant district attorney, bolstered by his false claims of certain actions he had taken in that capacity, would render Teaff more predisposed to grant his request. We agree with the court of appeals that this was sufficient evidence to support the reliance theory of the offense and thus to satisfy the specific intent requirement of Section 37.11(a)(1).

## Variance

Appellant pursues one more argument that we find necessary to address. He points to

the phrase in the indictment, "by trying to resolve a criminal case," and argues that this phrase "plainly identifies the pretended official act the State sought to prove[.]" Appellant's Reply Brief at 10. Thus, he argues, it was descriptive of an essential element of the offense and must be proven as alleged. *Id*. at 11. Because he only asked Teaff to do him a personal favor and did not specifically invoke his pretended authority or status as an assistant district attorney, Appellant continues, he cannot be said to have tried to resolve the criminal case, and he therefore must be acquitted. *Id*. at 12. We reject this argument—if only because we have already rejected Appellant's premise that "pretended official act" is elemental.

In all candor, we are simply unsure exactly what the State meant for the adverbial phrase—"by trying to resolve a pending criminal case"—to modify in the indictment.[6] There are three verbs that precede it, and it is unclear to which of these verbs the adverbial phrase should attach. Was it meant to qualify the verb "impersonate," the alleged *actus reus*? That seems grammatically unlikely, since that is the verb that is the remotest from it. Was it meant, alternatively, to modify the verb "to induce"? If so, it would then seem to be descriptive of Appellant's culpable intent; his purpose was to induce Teaff to submit or rely on his impersonation, and his means of so doing was "by trying to resolve a pending criminal case." But that makes very little practical sense, since it is difficult to imagine how Appellant's

---

[6] For the sake of convenience, we will quote the indictment again in relevant part here. It alleged that Appellant "impersonate[d] a public servant, namely: Assistant District Attorney with Dallas County, Texas, with the intent to induce Kourtney Teaff, an Assistant District Attorney with Montgomery County, Texas, to submit to the pretended authority or rely on the pretended officials acts of the defendant by trying to resolve a pending criminal case."

mere attempt ("trying") to accomplish an intended goal (*i.e.*, to "induce" Teaff to submit or rely) would serve as the mechanism by which that goal could actually be accomplished. Or finally, was the adverbial phrase meant to modify either or both of the verbs "to submit" or "to rely"? In that event, it would seem to modify non-elemental conduct on *Teaff*'s part rather than Appellant's—that Appellant intended for *Teaff* to submit to his pretended official authority or to rely on his pretended official acts "by trying to resolve a pending criminal case." But it was Appellant, not Teaff, who was trying to resolve Salas's pending revocation case. It seems most likely that the adverbial phrase was simply tacked onto the end of the statutory language, apropos of no particular preceding verb, as an inelegant description of Appellant's overarching motive—*another* non-elemental fact.

Whichever purpose this adverbial phrase was meant to serve, we do not hesitate to conclude that it should not be incorporated into the "hypothetically correct jury charge" against which to measure sufficiency of the evidence. *See Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001) (overruling "the surplusage rule and its *Burrell* [*v. State*, 526 S.W.2d 799 (Tex. Crim. App. 1975)] exception [whereby descriptive averments of statutory elements must *always* be proven as alleged],"[7] and holding that "[a]llegations giving rise to

---

[7] Prior to *Gollihar*, the law was as we had earlier described it in *Curry v. State*, 30 S.W.3d 394, 399 (Tex. Crim. App. 2000):

> Sometimes the State alleges evidentiary matters in its indictment which are not necessary to be proved under [TEX. CODE CRIM. PROC.] Article 21.03. These allegations are considered surplusage. In *Burrell v. State*, we explained that allegations not essential to constitute the offense, and which might be entirely omitted without affecting the charge against the defendant, and without detriment to

immaterial variances may be disregarded in the hypothetically correct [jury] charge" envisioned in *Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)). In *Johnson v. State*, 364 S.W.3d 292, at 297-99 (Tex. Crim. App. 2012), we explained that only those descriptive averments of statutory elements "that define[] or help[] define the allowable unit of prosecution" can give rise to material variances, and that any other deviation of the proof from a descriptive averment of an element in the indictment will be regarded as "immaterial" and will "not render the evidence legally insufficient." Even if, as Appellant contends, the adverbial phrase here described the "pretended official act" by which he intended to induce Teaff, and even if proof of such a "pretended official act" was elemental (which, we have already concluded, it is not), Appellant fails to address how it would define or help define the allowable units of prosecution for conduct that violates Section 37.11(a). Whatever *notice* problem may have been created by the ambiguous adverbial phrase,[8] Applicant did not complain of it at trial, and we conclude that it should not be included in the hypothetically correct jury charge. The court of appeals did not err to fail to take it into account in its

---

the indictment are treated as mere surplusage and may be entirely disregarded. The exception to that rule is when the unnecessary matter is descriptive of that which is essential to charge a crime. . . . [E]xtra language is descriptive of an element of the offense if it defines the offense more narrowly, places it in a specific setting, or describes the method by which it was committed. Such language must be proven as alleged, even though needlessly stated.

(footnotes, internal brackets, and internal quotation marks omitted).

[8] *See Johnson*, 364 S.W.3d at 299 n.47 ("We do not address whether a variance [from immaterial non-statutory allegations that do not render the evidence legally insufficient] could be significant enough to warrant a new trial based upon lack of notice.").

sufficiency analysis.

## CONCLUSION

Appellant committed the culpable act of impersonating an assistant district attorney. As a part of his ruse, he described certain acts to Teaff that he claimed to have engaged in as an assistant district attorney by which he hoped to persuade her to look favorably upon his request to treat Salas's case with leniency. This was enough to satisfy the reliance theory of culpable intent in the statute. The holding of the court of appeals is, accordingly, affirmed.


DELIVERED:      October 7, 2015
PUBLISH