

# NUMBER 13-22-00256-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

OSCAR OSVALDO BARAJAS JR.
A/K/A OSCAR OSVALDO BARAJAS,                    Appellant,

v.

THE STATE OF TEXAS,                    Appellee.

## On appeal from the 36th District Court
## of Aransas County, Texas.

# DISSENTING MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Silva and Peña**
**Dissenting Memorandum Opinion by Justice Silva**

Relying on *Thomason*, the majority determined that because the State failed to plead a facially complete offense, no material variance exists between the indictment and evidence presented at trial. *See Thomason v. State*, 892 S.W.2d 8, 11–12 (Tex. Crim.

App. 1994). Because I disagree with the majority's use of *Thomason* as well as its ensuing analysis, I respectfully dissent.

## I.    APPLICABLE LAW

At the outset, I wish to acknowledge that this case presents an interesting dichotomy between two differing considerations. Although Barajas did not object to a defect in the indictment, which waived any error as to the indictment, *see* TEX. CODE CRIM. PROC. ANN. art. 1.14(b), he is challenging the sufficiency of the evidence as measured against the hypothetically correct jury charge, which must be authorized by the indictment, *see Malik v. State*, 953 S.W.2d 234, 239–40 (Tex. Crim. App. 1997). Thus, Barajas is seemingly permitted to collaterally attack the indictment for the first time on appeal through a challenge to the sufficiency of the evidence. *See Curlee v. State*, 620 S.W.3d 767, 785 (Tex. Crim. App. 2021) ("A claim regarding the sufficiency of the evidence need not be preserved for review at the trial level and is not waived by the failure to do so." (quoting *Rankin v. State*, 46 S.W.3d 899, 901 (Tex. Crim. App. 2001))). Because these two considerations appear to be in conflict, I believe it is incumbent on the Texas Court of Criminal Appeals to further clarify the interplay between waiver of defect in the indictment and a challenge to sufficiency of the evidence.

To complicate matters more, the ever-evolving case law regarding challenges to the sufficiency of the evidence and variances creates a murky backdrop by which we consider the facts presented in this case. In 1997, the court of criminal appeals released *Malik*, wherein it held that a challenge to the sufficiency of evidence supporting a conviction should be measured against a hypothetically correct jury charge, overruling a

2

series of prior cases which had focused on the charge actually given. 953 S.W.2d at 239–40. *Malik* defined a hypothetically correct jury charge as "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* at 240. "The law authorized by the indictment 'includes the statutory elements of the offense and those elements as modified by the indictment.'" *Lang v. State*, 664 S.W.3d 155, 168–69 (Tex. Crim. App. 2022) (quoting *Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018)).

But what happens when "there is a discrepancy between the allegations in the charging instrument and the proof at trial"? *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). Such instance is called a "variance," and in *Gollihar*, the court considered what impact a variance has on the post-*Malik*-era sufficiency review. The court made a distinction between variances which were material and those which were not, concluding that "a hypothetically correct charge need not incorporate allegations that give rise to immaterial variances." *Id.* at 256. A variance is material if it operates to the defendant's surprise or prejudices his rights. *Id.* at 249 n.8.

There are two types of variances—statutory and non-statutory—intertwined in the materiality analysis. *See Hernandez v. State*, 556 S.W.3d 308, 313–14 (Tex. Crim. App. 2017). A statutory "variance occurs when the State's proof deviates from the *statutory theory* of the offense as alleged in the indictment." *Id.* at 313. In other words, "the State may not plead one specific statutory theory but then prove another." *Id.* A statutory variance is always material and renders the evidence legally insufficient. *Id.* The court

3

provided an example of a statutory variance:

> The example we gave in *Johnson* derived from the retaliation statute, which "makes it a crime to threaten a 'witness' or 'informant.'" [*Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012)] (discussing *Cada v. State*, 334 S.W.3d 766 (Tex. Crim. App. 2011)). "This first type of variance will occur if the State only pleads 'witness' in the charging instrument and proves only . . . 'informant' at trial." *Id.* Under these circumstances, the hypothetically correct jury charge would require the jury to find that the defendant threatened a witness. Proof that he threatened an informant only, and not a witness, would amount to a material variance between pleading and proof that would result in an acquittal (even though it constitutes an offense to threaten an informant).

*Hernandez*, 556 S.W.3d at 313.

A non-statutory variance, by contrast, is merely descriptive of the offense in some way. *Id.* at 314. An example of a non-statutory variance would be an indictment that alleges the defendant assaulted the victim with a knife, but the evidence adduced at trial shows the assault occurred using a bat. *See id.* A non-statutory variance may be material or immaterial, "depending upon whether it would result in conviction for a different offense than what the State alleged." *Id.* A variance may also be material if it fails to give the defendant sufficient notice of the crime for which he is accused or would allow a subsequent prosecution for the same offense—i.e., implicates double jeopardy. *See Byrd v. State*, 336 S.W.3d 242, 247–48 (Tex. Crim. App. 2011) (citing *Berger v. United States*, 295 U.S. 78, 82 (1935)). "What is essential about variances with respect to non-statutory allegations is that the variance should not be so great that the proof at trial 'shows an entirely different offense' than what was alleged in the charging instrument." *Johnson*, 364 S.W.3d at 295.

4

## II.    ANALYSIS

### A.    *Thomason* and Its Application

Where, then, does *Thomason* fit among the since-developed sufficiency and variance precedent? *See Thomason*, 892 S.W.2d at 11. Relying on *Thomason*, the majority concludes that because the State failed to charge a facially complete offense of either deadly conduct or aggravated assault, no material variance can exist between the indictment and the evidence at trial. *Thomason* does hold that when the State charges a facially complete offense, it cannot convict a defendant under another offense; however, it does *not* hold that a variance may only exist where the State charges a facially complete offense. *Id.* In *Thomason*, the court stated that:

> Reviewing the sufficiency of the evidence to support the conviction, we noted that while a conviction may be sustained under an indictment which is defective because it omits essential elements of the offense, *such is not true when the indictment facially charges a complete offense and the State presents evidence which convicts under a different theory than that alleged*.

*Id.* (internal citation omitted). However, the court was relying on *Studer v. State*, which was decided before *Malik* and its progeny, replacing the former sufficiency review with the current standard. *See id.*; *Studer v. State*, 799 S.W.2d 263 (Tex. Crim. App. 1990); *see also Malik*, 953 S.W.2d at 239–40; *Gollihar*, 46 S.W.3d at 246. That is not to say that *Thomason* does not have a place under the current variance jurisprudence; rather, it seems it would be a consideration under the materiality of a variance. *See, e.g.*, *Johnson*, 364 S.W.3d at 295–96.

Even if *Thomason* were to apply separate and apart from *Malik* and its progeny, I believe the majority misapplies it. As noted, *Thomason* does not stand for the position that a material variance may only exist where a facially complete offense is alleged in the

5

indictment. *See Thomason*, 892 S.W.2d at 11–12. In *Malik*, the court defined a "facially complete offense" as "alleg[ing] all of the essential elements of a criminal offense." 953 S.W.2d at 239 n.4.

Further, applying the "facially complete offense" standard, I believe the State did in fact allege the facially complete offense of deadly conduct. *See* TEX. PENAL CODE ANN. § 22.05(a), (b). A person may commit the offense of deadly conduct in two ways: (1) by recklessly engaging in conduct that places another in imminent danger of serious bodily injury, or (2) knowingly discharging a firearm at or in the direction of one or more individuals, or a habitation, building or vehicle, and is reckless as to whether the habitation, building, or vehicle is occupied. *Id.* § 22.05(a), (b). However, the majority concludes that because the indictment alleges that Barajas "intentionally, knowingly[,] or recklessly" shot Gaines, the indictment did not charge the facially complete offense of deadly conduct. *See id.* § 22.05(b) (requiring a *knowing* mens rea). I believe the language in the indictment charges the facially complete offense of deadly conduct under § 22.05(a), which includes reckless conduct. *See id.* § 22.05(a). The inclusion of additional culpable mental states, levels above which the statute requires, would not render the indictment facially incomplete. *See generally Hicks v. State*, 372 S.W.3d 649, 656–57 (Tex. Crim. App. 2012) ("[P]roof of the greater culpable mental state is necessarily proof of the lesser ones.").

Additionally, applying the court of criminal appeals' definition of a facially complete offense, I believe the State charged a facially complete offense under § 22.05(b) of the deadly conduct statute. *See id.* § 22.05(b). By alleging Barajas shot Gaines, the State

6

alleged that Barajas discharged a firearm at or in the direction of Gaines. *See id.* The majority concludes that the State's inclusion of "recklessly" prevents the indictment from alleging all the essential elements of the offense of deadly conduct. *See Malik*, 953 S.W.2d at 239 n.4 (defining a facially complete offense). But the indictment did also include that Barajas intentionally or knowingly shot Gaines. Thus, the indictment included the essential elements that (1) Barajas (2) shot at or in the direction of one or more individuals.[1] *See* TEX. PENAL CODE ANN. § 22.05(b). The inclusion of recklessness does not negate the essential elements, but rather improperly expands the State's theories of liability, which constitutes a defect in the indictment that must be objected to.[2] Barajas waived any objection to such defect. *See* TEX. CODE CRIM. PROC. ANN. art. 1.14(b).

Perhaps most concerningly, the majority's decision would allow the State to include any offense in the jury charge, so long as the indictment did not include a facially complete offense. Rather than endorse an analysis with such expansive implications, I believe the appropriate review would be to apply *Gollihar* and its progeny to determine whether a variance exists and, if so, whether it was material. *See Gollihar*, 46 S.W.3d at 246. Such

---

[1] The State argues that it alleged that Barajas actually shot Gaines, rather than alleging that Barajas shot at or in the direction of Gaines. *See* TEX. PENAL CODE ANN. § 22.05(a). However, that seems to be a distinction without a difference. The State does not argue that Barajas did not actually shoot at Gaines or in his direction.

[2] If the majority is correct in its conclusion that the indictment failed to allege any facially complete offense, then we must analyze whether the purported indictment "accuse[d Barajas] of a crime with enough clarity and specificity to identify the penal statute under which the State intend[ed] to prosecute." *Duron v. State*, 956 S.W.2d 547, 550–51 (Tex. Crim. App. 1997). The court of criminal appeals has "recognized as a legal principle that an indictment that fails to allege 'the commission of an offense' is not an indictment under the Texas Constitution." *Walker v. State*, 594 S.W.3d 330, 339 (Tex. Crim. App. 2020) (citing *Duron*, 956 S.W.2d at 551). If the instrument does not qualify as an indictment, "then the defendant is exempted from the usual requirement that he object to defects in the indictment before the date of trial." *Id.* at 339 n.44 (citing *Duron*, 956 S.W.2d at 551). Further, "absent an indictment or a valid waiver, a district court does not have jurisdiction over a case." *Id.* at 339.

review would also fit within *Malik*'s requirement that the sufficiency of the evidence be measured against a hypothetically correct jury charge, which, among other things, must be authorized by the indictment. *See Malik*, 953 S.W.2d at 240.

## B. *Malik, Gollihar,* and Material Variances

As noted, a variance exists when there is a discrepancy between the indictment and the evidence at trial. *Gollihar*, 46 S.W.3d at 246. If the variance between the indictment and the evidence is material, it is fatal, and we must enter a judgment acquitting the defendant. *See id.* at 246–47. Thus, the first inquiry must be to determine whether a variance exists, and if so, we ask: is that variance material under *Gollihar* and its progeny?

Under either Texas Penal Code § 22.02(a)(1) or § 22.02(a)(2), the gravamen of the offense of aggravated assault is the resulting bodily injury. *See Hernandez*, 556 S.W.3d at 314; *Johnson*, 364 S.W.3d at 298 ("The aggravated assault offense at issue is a result-of-conduct crime with the focus or gravamen being the victim and the bodily injury that was inflicted."); *Landrian v. State*, 268 S.W.3d 532, 533 (Tex. Crim. App. 2008) ("The gravamen of this result-oriented offense [(Aggravated Assault)] is 'causing bodily injury.'"). The State argues that by alleging Barajas shot Gaines, it implicitly pleaded the causational element of bodily injury (i.e., the gravamen of the offense), and thus, the indictment incorporated all requisite elements of aggravated assault. *See* TEX. PENAL CODE ANN. § 22.02(a)(2). I am unassuaged by the State's gravamen inclusion by implicit reference theory, nor have I found case law in support.[3] Regardless, the parties do not

---

[3] It is possible to shoot a person without causing bodily injury. For instance, a bullet may not cause

8

dispute that the indictment did not explicitly allege that Barajas caused bodily injury to Gaines—yet this is precisely what the State argued occurred at trial, what the submitted jury instructions charged, and what Barajas's conviction is necessarily predicated upon. *See* TEX. PENAL CODE ANN. § 1.07(a)(8) (defining "bodily injury" as "physical pain, illness, or any impairment of physical condition"); *id.* § 22.02. Thus, there is a variance as defined by *Gollihar. See Gollihar*, 46 S.W.3d at 246; *see also Cornwell v. State*, 471 S.W.3d 458, 467 (Tex. Crim. App. 2015) (observing that "descriptive averments of statutory elements that define or help define the allowable unit of prosecution can give rise to material variances") (cleaned up). I next determine whether the variance is material.

In the court of criminal appeals' example of a statutory variance, the indictment alleged a complete offense but swapped one statutory theory of completing an offense with another: namely, threatening a witness versus threatening an informant. *See Hernandez*, 556 S.W.3d at 313 (citing *Johnson,* 364 S.W.3d at 294); *see also* TEX. PENAL CODE ANN. § 36.06(a)(1)(A) (Obstruction or Retaliation). Such example begs the question: Can the absence of a statutory element in an indictment constitute a statutory variance? I believe the answer is "Yes." Otherwise, the requirement that a hypothetically correct jury charge be authorized by the indictment would ring hollow. *See Malik*, 953 S.W.2d at 240.

Here, the State did not just leave off an element of the offense of aggravated

---

bodily injury because its velocity is reduced from ricochet, passing through building materials, when shot from too far of a distance, or an underpowered round. Such possibility could explain why the State left off the bodily injury element and support the conclusion that it intentionally indicted the offense of deadly conduct. *See* TEX. PENAL CODE ANN. § 22.05(a).

assault, it left off the element that constitutes the gravamen of the offense. *See id.*; *see also Hernandez*, 556 S.W.3d at 314; *Landrian*, 268 S.W.3d at 533. Thus, the State alleged a statutory theory wherein Barajas did not commit bodily injury. *See Hernandez*, 556 S.W.3d at 313. Even if the variance were not statutory, "the variance [was] so great that the proof at trial 'show[ed] an entirely different offense' than what was alleged in the charging instrument." *Johnson*, 364 S.W.3d at 295. Accordingly, the variance would be a material—or fatal—one. *Gollihar*, 46 S.W.3d at 249.

## C.    Reformation

In some circumstances, a variance requires an acquittal. *See Johnson*, 364 S.W.3d at 295. However, "after a court of appeals has determined that evidence is insufficient to support a conviction, the court may reform the judgment to reflect a conviction for a lesser-included offense." *Lang*, 664 S.W.3d at 163 (citing *Thornton v. State*, 425 S.W.3d 289, 299–300 (Tex. Crim. App. 2014)). I believe reformation would be appropriate here.

To determine whether we should reform the judgment, reviewing courts must ask two questions:

> 1) in the course of convicting the appellant of the greater offense, must the jury have necessarily found every element necessary to convict the appellant for the lesser-included offense; and 2) conducting an evidentiary sufficiency analysis as though the appellant had been convicted of the lesser-included offense at trial, is there sufficient evidence to support a conviction for that offense?

*Thornton*, 425 S.W.3d at 300. If we answer "yes," then we reform the judgment to include

10

the lesser included offense.[4]  Because we can answer "yes" to both questions in this case, I would reform the judgment to reflect a conviction for deadly conduct pursuant to Texas Penal Code § 22.05(a).[5]  *See Lang*, 664 S.W.3d at 163; *Thornton*, 425 S.W.3d at 300; *see also* TEX. PENAL CODE ANN. § 22.05(a); *Guzman v. State*, 188 S.W.3d 185, 190–92 (Tex. Crim. App. 2006) (explaining when deadly conduct is a lesser included of aggravated assault with a deadly weapon); *Isaac v. State*, 167 S.W.3d 469, 473–74 (Tex. App—Houston [14th Dist.] 2005, pet ref'd) (same).

### III.    CONCLUSION

Because I believe there was a material variance between the indictment and the proof at trial, I would reverse the judgment of the trial court, reform the judgment to include a conviction for misdemeanor deadly conduct and remand the case to the trial court for a new sentencing hearing. *See Lang*, 664 S.W.3d at 176.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P.  7.2 (b).

Delivered and filed on the
13th day of July, 2023.

---

[4] Exceptions to mandatory reformation exist where there are multiple possible lesser-included offenses that the judgment may be reformed to include or where we have no way of determining which degree of the lesser-included offense the jury could find the appellant guilty of. *See Rodriguez v. State*, S.W.3d 503, 510 (Tex. Crim. App. 2014). Neither situation exists here.

[5] Further, because the evidence here showed that the firearm was discharged multiple times, Barajas would not be subjected to double jeopardy for two convictions of deadly conduct. *See Lozano v. State*, 577 S.W.3d 275, 278–79 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("Based on the statute as written, we conclude that the allowable unit of prosecution for the offense of engaging in deadly conduct is each discharge of a firearm that occurs under the proscribed surrounding circumstances.").