

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00039-CR
No. 02-23-00040-CR

_____

DANIEL JORDON WHITE, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 355th District Court
Hood County, Texas
Trial Court Nos. CR15355, CR15356

---

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

The trial court found Appellant Daniel Jordon White guilty of (1) retaliation and (2) impersonating a public servant and, for each offense, sentenced him to five years' imprisonment with the two sentences to run concurrently. *See* Tex. Penal Code Ann. §§ 36.06 (retaliation), 37.11 (impersonating a public servant). White appealed both convictions.

In each case, White contends that the evidence is insufficient to support the conviction. He also asks that we correct clerical error in each judgment because both judgments erroneously reflect that he pleaded guilty. We hold that sufficient evidence supports both convictions, and we modify both judgments to reflect that White pleaded not guilty to both offenses. We affirm both judgments as modified.

## I.  BACKGROUND AND EVIDENCE

### A.  The question of competency

White, a veteran, had been totally and permanently disabled since May 2013. Shortly after the alleged criminal conduct had occurred, a clinical psychologist found that White was incompetent to stand trial. A year later, a psychologist determined that White had complied with his medication without any side effects and that he was at that point competent to stand trial. When trial began two months later, the trial court specifically inquired about whether White was still on his medication. White confirmed that he was and that he was taking it regularly.

2

## B. The evidence at trial

White believed that his ancestors had owned a large tract of land and that at some point in time Hood County had wrongfully taken the property from his family.[1] He attributed this wrongful taking to a probate attorney named Maurice Walton, and White also believed that Judge Ralph Walton, a Hood County district judge, and Maurice Walton were one and the same man.

After Judge Walton retired, Judge Bryan Bufkin took his bench. At that point, White asserted that "Judge Bufkin . . . would have to answer for the things that Judge Walton had done wrongfully to his family in taking his land away from him." And White began to focus on Judge Bufkin.

For example, White sent a package to Judge Bufkin with a Texas flag and a note instructing him to take down the flag currently flying over the courthouse and to replace it with the flag that White had provided. White also attempted to contact Judge Bufkin directly at the courthouse, and he sent a letter to the judge's home address. At another point, White tried to assess an IRS lien against Judge Bufkin. Finally, White served Judge Bufkin with a notice to appear at a hearing in Glen Rose on October 15, 2021, to answer for wrongfully taking his family's land, and, in connection with that notice, White appeared to threaten Judge Bufkin with execution by hanging if White did not get his land back.

---

[1] White also claimed that his family "own[ed] the Paluxy River."

3

In a document entitled "Subpoena to Testify and/or Produce and Permit Inspection of Items," White specifically described the location that "Maurice Walton or another judge" was commanded to appear at "2588 CR 413, Glen Rose, Texas 76043, *near the large tree*." [Emphasis added.] In another document, White warned that "[v]iolations of the constitution are punished by hanging for those who took an oath of office." And, in a September 23, 2021 email sent to the Texas General Land Office, White stated, "I will execute a judge next month." Officer James Luckie, a licensed peace officer who investigated White, testified without objection that although White made these threats against Judge Bufkin in "a roundabout way," it was "very apparent" to the officer from his communications with White that White "was referring to the hearing that he had scheduled in Glen Rose and that Judge Bufkin was going to be executed by hanging for the violations that [White] perceived . . . were committed."

While White declined to visit face to face with Officer Luckie, the two did communicate at length over the telephone and through emails. In one of those communications, White accused Officer Luckie of being a cult leader: "Do they pick the one who looks most like Jackson for your cult? I'd say you're the leader. Do not contact me. I will not comply with any part of your Jacksonian cult nonsense." White also threatened Officer Luckie: "You have some jail time and a fine coming for

4

obstruction of a railroad.[2]  I've already sent the order to the judge when you lied about the oath honoring the Constitution." White continued his demands:

> You're never going to do your job.  And I will enforce the oath for [General Land Office Commissioner George P. Bush] too.  Stop violating the Constitution, stop obstruction of a railway and the conspiracy to steal railroad's property.  I will bankrupt you cult members.  Stop playing your . . . games or you will honor your oaths after there isn't anything left for me to seize.  Null and void means get . . . out of Texas, cult.

Consistent with White's assertion that Officer Luckie was the leader of a cult, White opined that Judge Bufkin was just Officer Luckie's pawn and offered to trade Judge Bufkin for Officer Luckie:

> Dan McCarty[3] also owns the Glen Rose dump.  So if it's approved on McCarty land, railroad court is in the big building where the trash goes.  I have my own key to get in out there.  I'll trade you for [Judge] Bufkin.  I think he is just your scapegoat or will be.  He is a good church-going man.  You'd all let him pay for your greed.  I contacted the district judge because he is sovereign, lower than my authority, so can't lie.  You think he and a lot of people aren't looking into any of your corruption.  Justice Thomas[4] got the null and void already.  Your time is up.  Pack your bags and get out.  You had your chance to work with me.  Now a train is heading for you[,] and you built your house on railroad tracks.  Your cult can't stop the train once it's full speed.

---

[2]White tied his judicial authority and his claims to the railroad, although why he did so is not clear.  An investigator for the district attorney's office who had interviewed White said that White believed "himself to be what he characterized as the railroad."  During a recorded conversation, White said, "I'm a railroad."

[3]Dan McCarty's role in White's complaints is not clear.

[4]White was apparently referring to United States Supreme Court Justice Clarence Thomas.

In another email between Officer Luckie and White, White wrote, "If you break the law, you will be tried in federal court, me as the judge." Elsewhere, White explained his perceived basis of authority by claiming that a "federal district court agreed by giving notice to proceed for [him] to be a railroad court." And in a recorded telephone conversation, White referred to himself as a higher court.

White's assertion of authority found additional support in a document that he filed in Tarrant County. He prepared and filed in the Tarrant County clerk's office a document addressed to Judge Wayne Salvant in which he contended that the United States's annexation of Texas in 1845 was null and void and that, therefore, Texas's current constitution would no longer be honored.[5] The document also instructed all state, county, and federal officials to vacate their offices. Within the document, White proclaimed, "All those who do not honor my order are to hang at town court house [sic] until death."

Officer Luckie was not the only person to investigate White. An investigator with the district attorney's office also interviewed White and, based on their discussion, elaborated on White's purported basis of authority:

> The majority of [our discussion] dealt with him believing himself to be
> what he characterized as the railroad where he talked extensively about
> the 1845 Constitution, his authority over federal judges, state judges,

---

[5]White placed two cause numbers at the top of this document. We take judicial notice that Wayne Salvant is the judge of Criminal District Court No. 2 in Tarrant County. *See* Tex. R. Evid. 201(b)(2). Tarrant County Texas, https://www.tarrantcountytx.gov/en/criminal-courts/felony-courts/criminal-district-court-2.html (last visited 10/09/2023).

6

county judges, that he had pretty much ultimate authority and he was only bound by -- I believe it was the Railroad Authority Act of 1960 . . . .

According to this investigator, White did not deny threatening to harm Judge Bufkin but did deny having any intent to carry out any of his threats.

## II.  STANDARD OF REVIEW

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).  This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility.  *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021).  We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's.  *Queeman*, 520 S.W.3d at 622.  Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict.  *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a

7

'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

### III. DIMINISHED CAPACITY

In White's briefs, he notes that his mental illness manifested itself in numerous delusions. And White's mental issues are the elephant in the room.[6]

But for our purposes, "[t]here is simply no defense recognized by Texas law stating that, due to the defendant's mental illness, he did not have the requisite *mens rea* at the time of the offense because he does not have the capacity[] or is absolutely incapable of ever forming that frame of mind." *Jackson v. State*, 160 S.W.3d 568, 575 (Tex. Crim. App. 2005). Just the opposite, a mental illness, such as paranoia, might provide a motive for an intentional act. *Id.* at 572. Put another way, a defendant may act intentionally or knowingly based on delusional thinking, but the delusional thinking does not negate the fact that the defendant acted intentionally or knowingly. *See Mays v. State*, 318 S.W.3d 368, 380–81 (Tex. Crim. App. 2010); *Simpson v. State*, No. 03-21-00224-CR, 2023 WL 2617802, at *7–8 (Tex. App.—Austin Mar. 24, 2023, no pet.) (mem. op., not designated for publication).[7]

---

[6] White did not raise the insanity defense.

[7] Evidence of mental illness may be relevant for mitigation purposes during the punishment trial, however. *See Mays*, 318 S.W.3d at 381.

8

## IV. RETALIATION DISCUSSION

The State alleged that on or about September 23, 2021, White intentionally or knowingly threatened to harm Judge Bufkin by an unlawful act—harassment—in retaliation for or on account of Judge Bufkin's services or status as a public servant. *See* Tex. Penal Code Ann. §§ 36.06(a)(1) (retaliation), 42.07(a)(2) (harassment).

A person commits the offense of retaliation "if the person intentionally or knowingly harms or threatens to harm another by an unlawful act . . . in retaliation for or on account of the service or status of another as a . . . public servant." *Id.* § 36.06(a)(1)(A). And a person commits the offense of harassment if "with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person . . . threatens, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person or to commit a felony against the person, a member of the person's family or household, or the person's property." *Id.* § 42.07(a)(2). "Bodily injury" means "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8).

Whether a particular statement may properly be considered a threat is governed by an objective standard—whether a reasonable person would foresee that the statement would be interpreted as a serious expression of intent to harm or assault by those to whom the maker made the statement. *Manemann v. State*, 878 S.W.2d 334, 337 (Tex. App.—Austin 1994, pet. ref'd). The test is whether a threat would justify apprehension by an ordinary hearer, not whether the threat communicated caused a

9

particular recipient to actually become apprehensive. *See id.* Threats of physical harm need not be direct but may be implied through veiled statements insinuating injury. *Id.* The ability to carry out the threat in this type of offense is not an essential element of the offense. *Id.* Nor is it necessary that the party threatened be present when the threat was made. *Whitehead v. State*, 273 S.W.3d 285, 286 n.2 (Tex. Crim. App. 2008); *Raybon v. State*, No. 02-12-00071-CR, 2013 WL 4129126, at *4 (Tex. App.—Fort Worth Aug. 15, 2013, pet. ref'd) (per curiam) (mem. op., not designated for publication).

On this record, a rational factfinder could have reasonably concluded that White targeted Judge Bufkin precisely because he was a judge, i.e., that White held Judge Bufkin responsible for something that a previous judge had allegedly done, and, as a consequence, he threatened to execute Judge Bufkin by hanging. Although at trial there was testimony that White asserted that he never intended to follow through on his threat, this is of no moment. An intent to follow through on the threat is not an element of the offense. *Graves v. State*, Nos. 03-17-00493-CR, 03-17-00494-CR, 2018 WL 4140663, at *2 (Tex. App.—Austin Aug. 30, 2018, no pet.) (mem. op., not designated for publication); *In re B.P.H.*, 83 S.W.3d 400, 407 (Tex. App.—Fort Worth 2002, no pet.) (stating same proposition in context of juvenile delinquency). Thus, there was sufficient evidence that White intentionally or knowingly threatened to harm Judge Bufkin in retaliation based on Judge Bufkin's status as a judge. *See* Tex. Penal Code Ann. §§ 36.06(a)(1), 42.07(a)(2); *Queeman*, 520 S.W.3d at 622. We overrule

10

White's sufficiency issue as to the retaliation conviction. *See Doyle v. State*, 661 S.W.2d 762, 727–29 (Tex. Crim. App. 1983) (stating that the evidence showing the defendant, while in jail, threatened to kill either a judge or a county commissioner based on defendant's purported grievance with the judge was sufficient to prove the defendant committed the offense of retaliation against the judge).

## V. IMPERSONATING-A-PUBLIC-SERVANT DICUSSION

In the impersonating-a-public-servant indictment, the State alleged that on or about September 25, 2021, White impersonated a public servant, namely: a judge of a court of law, with the intent to induce Officer Luckie to submit to White's pretended official authority by demanding that Officer Luckie return land that White claimed to own. *See* Tex. Penal Code Ann. § 37.11 (impersonating a public servant).

In pertinent part, Section 37.11 provides, "(a) A person commits an offense if the person: (1) impersonates a public servant with intent to induce another to submit to the person's pretended official authority or to rely on the person's pretended official acts . . . ." *Id.* § 37.11(a)(1). The general purpose of section 37.11 is to protect the public from being "placed at risk of submitting to the pretended authority of an individual impersonating an agent of a 'government unit.'" *Rice v. State*, 195 S.W.3d 876, 881 (Tex. App.—Dallas 2006, pet. ref'd).

For purposes of our analysis, although Section 37.11(a)(1) is not divided into two parts, we further divide subsection (a)(1) into two possible mens reas—the intent to induce *submission* to pretended official authority or the intent to induce *reliance* on

11

pretended official acts. White's indictment alleges the former, i.e., a violation of Section 37.11(a)(1) with the intent to induce submission to his pretended official authority. The indictment does not allege that White acted with the intent to induce reliance on his pretended official acts.

Thus, as written, Section 37.11(a)(1) has two components—a culpable act and a culpable mental state, and the State must prove both the culpable act and at least one of the two culpable specific intents. *See Cornwell v. State*, 471 S.W.3d 458, 464 (Tex. Crim. App. 2015). Simply showing that White falsely held himself out to be a public servant is not enough to support a conviction.[8] *See id.*

In White's case, the evidence showed that, among other things, he held himself out to be a judge. A judge is a public servant. White does not dispute that he claimed to be a judge.

What White disputes—reading his brief broadly—is whether his impersonation induced anyone to do anything—either submit or rely—given his mental history and delusional claims. Under the circumstances, we too question whether anyone took White's assertions seriously.

But our focus is not on whether anyone believed White. Rather, our focus is on whether the evidence showed that White had the specific intent to induce Officer

---

[8]In November 2021 and December 2022 competency evaluations, a doctor described White's claim to be a judge as a "grandiose delusion" of a significant nature.

12

Luckie to submit to his pretended authority. *See* Tex. Pen. Code Ann. § 37.11(a)(1); *Cornwell*, 471 S.W.3d at 464.

The Texas Court of Criminal Appeals's *Cornwell* opinion provides considerable guidance on this issue. In *Cornwell*, the indictment alleged both culpable mental states, i.e., that the defendant intended to induce the complainant to submit to his pretended authority or to rely on acts of that pretended authority. 471 S.W.3d at 461. In contrast, as noted earlier, in White's indictment, the State alleged only that he intended to induce Officer Luckie to submit to his pretended official authority.

Although the indictment in *Cornwell* asserted both culpable mental states, *id.* at 461, the Texas Court of Criminal Appeals analyzed the case under the latter allegation—that the defendant intended to induce the complainant to rely on the defendant's "pretended official act" under that pretended authority, *see id.* at 462–66. Under the facts of *Cornwell*, this focus made sense because the latter was a better fit.[9]

---

[9]*Cornwell* purports to address Section 37.11(a)(1) globally. *See id.* at 462. But its focus on a "pretended official act" borrows language from the reliance option that is absent from the submission option. *See* Tex. Penal Code Ann. § 37.11(a)(1). The *Cornwell* opinion appears to suggest that even with the "intent to induce another to submit to the person's pretended official authority," a "pretended official act" is, as a practical matter, still required "as an evidentiary fact from which the . . . specific[-]intent [element] may be inferred." 471 S.W.3d at 465. We agree that even under the submission option, the defendant's specific intent will—with few exceptions—have to be proven circumstantially by his acts or inferentially from his words. As the Texas Court of Criminal Appeals noted, speech is an act for purposes of the Texas Penal Code. *See id.* Not only must the State show an impersonation, but it must show—by the defendant's acts or words—the defendant's intent to induce another to submit to his pretended official authority.

In *Cornwell*, the defendant falsely claimed to be a Dallas County assistant district attorney in an attempt to help a friend who was facing a Montgomery County motion to revoke probation. *Id.* at 460. When communicating with the Montgomery County prosecutor, the defendant made other representations. He asserted that he had run his friend's criminal history, had reviewed her file, and had spoken with the Montgomery County probation department about her. *Id.* He further represented that he had prosecuted his own nephew and claimed that he and the prosecutor were on the same team. *Id.* at 461.

The court held that the defendant had made all these representations with the intent to persuade the Montgomery County prosecutor to rely on them. *Id.* at 465–66. The court thus ruled that sufficient evidence supported the Section 37.11(a)(1) specific intent requirement. *Id.* at 466.

Contextually, the defendant in *Cornwell* never purported to have any authority to which the Montgomery County prosecutor had to submit but, instead, asserted authority on which he hoped the Montgomery County prosecutor would rely to induce that prosecutor to act more leniently toward the defendant's friend. Thus, although charged both ways, factually, *Cornwell* was not a submission case but rather a reliance case, i.e., the defendant attempted to induce reliance on his pretended official acts. *See* Tex. Penal Code Ann. § 37.11(a)(1).

Even though White's indictment alleged a submission theory, i.e., a violation of the statute by attempting to induce Officer Luckie's submission to White's pretended

14

official authority, *see id.*, we nevertheless find the *Cornwell* analysis instructive in our evidentiary analysis of White's specific intent.

We proceed with the understanding that simply impersonating a public servant is not an offense. *See Cornwell*, 471 S.W.3d at 464. Comedians impersonate public officials but do so for comedic purposes. Actors impersonate public officials but do so for dramatic purposes. No one is suggesting that they are committing an offense by doing so. "[I]mpersonating a public servant could never be a crime unless accompanied by the requisite intent." *Harrison v. State*, 633 S.W.2d 337, 339 (Tex. App.—Houston [14th Dist.] 1982, no pet.).

The *Cornwell* analysis shows that not only must the defendant impersonate a public servant but also, as a part of that impersonation, the defendant must intend to induce another person to respond as though the defendant was the public servant that he purported to be. Consequently, although White's indictment alleged submission, rather than reliance, we conclude that the *Cornwell* discussion under subsection (a)(1) relating to reliance remains applicable because it focuses on the defendant's specific intent to induce. *See* Tex. Penal Code Ann. § 37.11(a)(1); *Cornwell*, 471 S.W.3d at 465–66.

In *Cornwell*, the defendant attempted to dupe the prosecutor, but the prosecutor quickly saw through the con. Likewise, White's scheme here might have been dubious, even preposterous, and Officer Luckie may never have believed him to have been a federal judge or acting under federal judicial authority, but the State

nevertheless proved that White intended to induce Officer Luckie to "submit to [his] pretended official authority."

Moreover, White did more than simply assert that he was a judge. White articulated to Luckie his theory on why his purported judicial authority trumped all the other competing authorities.[10] Officer Luckie was aware of the nature of White's grievance—he wanted his land back—and White told Officer Luckie that he had already sent an order to a judge informing the judge that Officer Luckie had lied when taking his oath to the Constitution. White further informed Officer Luckie that he would be jailed and fined for obstructing the railroad. "If you break the law," White said, "you will be tried in federal court, me as the judge." From this, a rational trier of fact could have reasonably concluded that White impersonated a public servant, namely: a judge of a court of law, with the intent to induce Officer Luckie to submit to White's pretended official authority. *See* Tex. Penal Code Ann. § 37.11(a)(1); *Queeman*, 520 S.W.3d at 622. We thus overrule White's sufficiency challenge to the impersonation conviction. *See Alvarezmijan v. State*, No. 02-13-00035-CR, 2014 WL 2146255, at *1–3 (Tex. App.—Fort Worth May 22, 2014, pet. ref'd) (mem. op., not designated for publication) (holding evidence sufficient to support conviction for

---

[10]White's explanation for his paramount authority is nonsensical. White asserted that a "federal district court agreed by giving notice to proceed for [him] to be a railroad court." He also asserted that the United States's annexation of Texas in 1845 was null and void and that Texas's current constitution would not be honored. On the other hand, he claimed to have authority over federal, state, and county judges and instructed all federal, state, and county officials to vacate their offices.

impersonating a public servant—a police officer—with the intent to induce submission despite the complainant's not believing the defendant was a police officer and not submitting to the defendant's pretended authority).

## VI. CLERICAL ERROR

Both judgments erroneously recite that White pleaded guilty to the alleged offenses. White personally entered pleas of not guilty to both charges. White asks that we correct these clerical errors.

An appellate court may modify a trial court's judgment to make the record speak the truth if it has the necessary data and evidence to do so. *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Cain v. State*, 621 S.W.3d 75, 88 (Tex. App.—Fort Worth 2021, pet. ref'd). Accordingly, the portions of both judgments that reflect that White pleaded guilty are modified to reflect that White pleaded not guilty.

## VII. CONCLUSION

We overrule White's sufficiency challenges in both appeals. Because both judgments contain clerical error, we modify both to reflect that White pleaded not guilty. As modified, we affirm both judgments.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: October 19, 2023